In the Matter of the Investigation and Removal from Office of ROBERT W. MAIDMAN, as Town Justice of the Town of Clarkstown.

Second Department, June 25, 1973.

*Solomon A. Klein (Nicholas C. Cooper* of counsel), petitioner in person.

*Brent, Phillips, Dranoff & Davis, P. C. (Maurice Phillips* of counsel), for respondent.

*Per Curiam.* Following an inquiry by the Grand Jury of the County Court, Rockland County (January, 1972 Term), this court, by order dated December 14, 1972, issued pursuant to law (N. Y. Const., art. VI, § 22, subd. i; Judiciary Law, § 429), designated and authorized Solomon A. Klein, Esq., Chief Counsel to the Judicial Inquiry, as the petitioner *pro se*, to prepare a petition setting forth charges for the removal of the respondent from his judicial office of Town Justice of the Town of Clarkstown and to institute and prosecute the proceeding for such removal. In accordance, Mr. Klein instituted the instant proceeding.

In his petition Mr. Klein generally charged that the respondent, " while holding judicial office as a Town Justice of the Town of Clarkstown, engaged in conduct and activities revealing deficiency in character and fitness and indifference to the standards of conduct required of a member of the judiciary to so grievous an extent as to render him unfit to retain judicial office." He specifically charged that " in and between the 15th day of January and the 18th day of January 1972, respondent, as Town Justice of the Town of Clarkstown, wrongfully participated in the criminal matter of *People* v. *Aaron C. Windheim*, returnable before said Town Justice Court, said matter being one in which respondent was disqualified by reason of his interest therein;

said interest being that the matter concerned a charge of Petit Larceny against respondent's own law partner Aaron C. Windheim." Both of these allegations were denied by the respondent in his answer to the petition. Also denied in pertinent part were the factual details set forth in the petition on which the petitioner predicated his allegation of wrongful participation in the above-mentioned criminal matter.

By order of this court dated February 26, 1973, the issues raised by the pleadings were referred to Hon. WILLIAM A. WALSH, Jr., a Justice of the Supreme Court, for hearing and a report, setting forth his findings with respect to each of the issues. Such hearing was held on March 12, April 2, April 3, April 4 and April 5, 1973. In a report dated April 18, 1973, Mr. Justice WALSH reported the following factual findings:

" 1. Robert M. Maidman is an attorney duly admitted to practice before the courts of the State of New York.

" 2. Robert M. Maidman was duly elected Town Justice of the Town of Clarkstown, County of Rockland, State of New York, at the general election held on the 2nd day of November, 1971, and assumed his judicial duties on the first day of January, 1972.

" 3. That Robert M. Maidman, at the time of his election, and for a number of years prior thereto, and until this date, was, and is, a law partner of Aaron G. Windheim, both of whom are partners with others practicing law under the partnership name of Windheim, Bernard, Prindle and Maidman, with offices at 145 Main Street, in the Village of Nyack, County of Rockland, State of New York.

" 4. That on the 15th day of January, 1972, said Aaron G. Windheim was detained by Security Officer, Scott Whitaker, employed by E. J. Korvette at the E. J. Korvette store located on Route 59, Nanuet, in the Town of Clarkstown, Rockland County, State of New York, and was charged with Petty Larceny in that he was alleged to have shoplifted from said store a ski jacket and cap having an approximate value of $38.00. Patrolman Brian Healy of the Town of Clarkstown Police Department was called to said Korvette's store and an appearance ticket was issued for violation of Section 155.25 of the Penal Law, returnable before Honorable Edward J. Flynn, another Town Justice of the Town of Clarkstown, at 9:30 A.M. on January 26, 1972.

" 5. That after the issuance of the appearance ticket on the 15th day of January, 1972, Aaron G. Windheim went to his firm's office in Nyack and telephoned Robert M. Maidman to come to said office where they discussed the arrest and what

action could be taken in regard thereto. Robert Maidman then placed a phone call to the home of Richard Murray, Chief Security Officer of the E. J. Korvette store in Nanuet, but was unable to reach him at that time. On Sunday, January 16, 1972, he again called the home of said Richard Murray and identified himself as Judge Maidman, and discussed with him the pending matter.

" 6. On Monday, January 17, 1972, Robert Maidman, from his office in New York City, again called Richard Murray at his office in the E. J. Korvette store in Nanuet and asked him if there was anything that could be done to straighten the matter out. Richard Murray advised him that he would have to contact his superiors at the New York office of E. J. Korvette before discussing the matter any further.

" 7. On Tuesday, January 18, 1972, while at the Town Hall of the Town of Clarkstown in New City, New York, Robert Maidman directed Bonita Yannazone, a clerk of the Justices' Court of the Town of Clarkstown, to call Richard Murray at the Korvette store in Nanuet and to make an appointment for them to meet. On the afternoon of January 18, 1972, Richard Murray and Fenton Fergus, the Chief of Security for the E. J. Korvette Company, went to the courtroom of the Town of Clarkstown Justice Court over which Robert Maidman was presiding. Upon seeing them enter the courtoom, Robert Maidman recessed the court and directed them into his chambers adjacent to the courtroom. A discussion ensued regarding the disposition of the charges against Aaron G. Windheim, and Fenton Fergus advised that he would require the delivery of a general release from Aaron Windheim if they were to resolve the matter.

" 8. Robert Maidman then requested that they leave his chambers and thereafter placed a phone call to Aaron Windheim advising him of the developments. At the request of Aaron Windheim, Gilbert McCormack, Esq., arrived at the Judge's Chambers and took over the discussion of the matter with Mr. Murray and Mr. Fergus. Mr. Windheim then had a messenger deliver to Mr. McCormack a duly executed general release.

" 9. At the chambers of Judge Maidman after further discussion between Mr. McCormack and Mr. Fergus and Mr. Murray, an understanding was arrived at, and at Mr. McCormack's request, there was to be a stipulation entered in the record.

" 10. In view of the fact that the appearance ticket was returnable before Judge Edward Flynn, Mr. McCormack placed a phone call to Judge Flynn and requested that he come to the

court in order that the record could be made before him. Judge Flynn declined stating that no information or accusation instrument had been filed, but only an appearance ticket had been issued. Mr. McCormack then informed Judge Maidman of Judge Flynn's decision and he then called his court reporter, Alan Cameron, to his chambers where, in the presence of Mr. McCormack, Mr. Fergus, Mr. Murray, and Judge Maidman, a stipulation was entered in the record. (Petitioner's Exhibit #1). Upon the completion of the recording of the stipulation, Mr. Windheim's general release was delivered to Mr. Fergus.

"11. That Robert Maidman was motivated by a concern and fear for the well-being of Aaron Windheim, a friend and colleague, who had made statements to Judge Maidman that evidenced a contemplation of suicide or other act of desperation in view of the embarrassing situation in which he found himself because of the tremendous amount of publicity in the press and on the radio which the arrest had received. At all times, Aaron Windheim had protested his innocence of any act that would have justified the arrest.

"12. The actions of the respondent, Robert Maidman, although appearing to be inappropriate for a judicial officer to have engaged in the chambers of the court and while attired in a judicial robe were probably indiscreet, but no finding can be made that they were performed with any intention other than to assist a distraught friend."

Factual Finding 12 is in context more in the nature of a conclusion. As such, it is distinguishable from Findings 1 to 11, inclusive, which are not challenged by either the petitioner or the respondent. This is apparent from the fact that both now move to confirm "the findings of fact as contained in the report." They differ only in the ultimate relief requested, the respondent seeking a dismissal of the proceeding, predicated on Finding 12, which, as above stated, we construe to be a conclusion, and the petitioner seeking removal, predicated on Findings 1 to 11, inclusive.

Not included in the foregoing 11 factual findings are the following facts of which this court takes judicial notice: (1) Aaron C. Windheim was, at the time of the respondent's intercession on his behalf as above noted, a Village Justice of the Village of Nyack and (2) following the above-noted disposition in the respondent's chambers and at the instance of the District Attorney of Rockland County, Windheim was indicted by the Grand Jury for petit larceny and the indictment was subsequently dismissed on motion of the District Attorney, upon Windheim's resignation from the Bench.

Predicated on all of the foregoing, while we are in accord with the learned Justice's statement in Finding 11 that the respondent "was motivated by a concern and fear for the well-being of Aaron Windheim, a friend and colleague," we do not agree with his conclusions contained in Finding 12, in which he merely characterized the respondent's conduct as "inappropriate" and "probably indiscreet", and stated that "no finding can be made that they [the respondent's actions] were performed with any intention other than to assist a distraught friend." Accordingly, to the extent that they may be considered as comprising an over-all finding designated in the report as Finding 12, these conclusions and the over-all finding are hereby disaffirmed. All the remaining findings of fact are confirmed.

In our opinion, the respondent's conduct, reflected in the confirmed findings, was violative of canons 4 and 29 of the Canons of Judicial Ethics (of the New York State Bar Association). These canons, *inter alia*, provide that a Judge's "personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his every-day life, should be beyond reproach" (canon 4) and that "a judge should abstain from performing or taking part in any judicial act in which his personal interests are involved" (canon 29). While the respondent may not have acted in an official judicial capacity, it cannot be gainsaid that his judicial status was a significant factor in prevailing upon Windheim's accusers to withhold their charges. Moreover, by conducting the discussions and negotiations for a disposition of the charges and by utilizing his court reporter and permitting the stipulation to be consummated, all in his presence and in his chambers while attired in his judicial robe, the respondent gave every appearance of having pre-empted the judicial function of another Judge and of having taken part in a judicial act and matter in which his personal interests were involved after he was unsuccessful in prevailing upon the other Judge to prematurely entertain the matter. Such conduct, to say the least, reflected a lack of proper sensitivity, if not a disregard, for the appearance of judicial propriety.

It is therefore the decision of this court that the respondent be and he hereby is publicly censured.

In withholding the sanction of removal for cause, we take cognizance of the fact that the respondent was confronted with an emotionally charged situation in which the career of a colleague, partner and friend was at stake. While this does not justify the loss of perspective which his misconduct reflected, it does account for it and negates venality. The factors render

his actions understandable, if not excusable, and, together with the absence of any surreptitiousness in his behavior, bear out his claims of inadvertence and lack of intent to violate any judicial canon.

RABIN, P. J., HOPKINS, MUNDER, MARTUSCELLO and LATHAM, JJ., concur.