[699 NYS2d 77]

MOUNT SINAI HOSPITAL, as Assignee of MARIA FIGUERDOV, Respondent, v TRIBORO COACH, INCORPORATED, Appellant.

Second Department, November 29, 1999

## APPEARANCES OF COUNSEL

*Jerome Cooper,* East Norwich (*Bertram Herman* of counsel), for appellant.

*Joseph Henig, P. C.,* Bellmore (*Mark Green* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMANN, J.

In this case we are called upon to determine how an insurer, following an untimely disclaimer of coverage, must proceed in order to be allowed to defend against a hospital's no-fault claim on the ground that the injuries for which the patient was treated did not arise out of an insured incident (Insurance Law § 5106; 11 NYCRR 65.15 [g] [3]; *see, Central Gen. Hosp. v Chubb Group of Ins. Cos.,* 90 NY2d 195, 199).

### THE FACTS

On January 3, 1997, 33-year-old Maria Figuerdov was injured when the bus in which she was a passenger was involved in an accident. The bus was owned and operated by the defendant, Triboro Coach Incorporated (hereinafter the defendant or Triboro). Figuerdov was taken to the emergency room of the Elmhurst Hospital Center, where Dr. Randy Bernot noted that she was complaining of neck and back pain after hitting the right side of her head in the bus accident.

Although the medical documentation is largely illegible, it appears that on January 6, 1997, January 13, 1997, and January 20, 1997, Figuerdov visited her physician complaining that after the incident on the bus she had been experiencing worsening neck and low back pain, pain throughout her entire body but particularly on the left side, decreasing spinal range of motion, and pins and needles sensations in both legs. The physician performed a full examination, which is not in the record. On January 29, 1997, Figuerdov returned to her doctor after falling on the sidewalk due to unsteadiness on her feet. She reiterated her former complaints, adding that her whole left side felt "raw" and that she was experiencing severe "head pain at the base of the neck."

On March 14, 1997, Figuerdov was admitted to the plaintiff, Mount Sinai Hospital (hereinafter the plaintiff, Mount Sinai, or the hospital), for a "craniotomy for trauma." Figuerdov was discharged from Mount Sinai on March 19, 1997, with a bill for services totaling $19,878.63.

Figuerdov retained the law firm of Rovegno and Taylor to file a claim with Triboro (which is self-insured) for no-fault benefits relative to her orthopedic and head injuries. The record discloses that Figuerdov was examined on behalf of Triboro by orthopedic surgeon Dr. Harvey Fishman on July 21, 1997. Correspondence included in the appendix further evidences that between July and December 1997, Rovegno and Taylor supplied Triboro with authorizations for Figuerdov's complete medical records and CAT scan films. In Triboro's last letter to Rovegno and Taylor, dated December 22, 1997, the defendant indicated (by not renewing any of its prior requests) that it had received all medical information on Figuerdov except for her Bellevue Hospital records, and that Bellevue had informed Triboro that it was currently processing Triboro's demand. Triboro's letter concluded (as its others had done): "Until we are able to have [Figuerdov's] complete medical records, of prior and post treatments, examined and evaluated, we are not able to determine at this time, what injury, if any, was sustained on our bus. We are therefore holding your client's claim in abeyance."

Meanwhile, on November 11, 1997, Mount Sinai, as assignee of Maria Figuerdov, submitted to Triboro a no-fault billing form N-F5, a UB-92 and a DRG Master Output Report, seeking payment of its $19,878.63 hospital bill (*see,* Public Health Law § 2807-c [1] [b-1]; 11 NYCRR 65.15 [d] [6]). The forms indicated, *inter alia,* that Figuerdov's diagnosis was code No.

85220, or "Subdural hemorrhage following injury," and that the "principal procedure" performed was code No. 0131, or "Incision of cerebral meninges." The DRG description was: "CRANIOTOMY FOR TRAUMA AGE [i.e., 'greater than'] 17." The certified mail return receipt indicates that Triboro received this package on November 14, 1997.

Triboro never paid this claim or issued a denial of claim form. Neither did it request additional information or in any way contest the adequacy of the information supplied by Mount Sinai. Indeed, Triboro issued no response whatever to Mount Sinai's application.

On January 12, 1998, Mount Sinai sued Triboro for payment of Figuerdov's hospital bill under Triboro's no-fault endorsement. After joinder of issue, the plaintiff moved for summary judgment on the ground that the defendant was precluded from interposing any defense to the hospital's claim because it had neglected to issue a denial of claim form within 30 days of receiving the no-fault claim, as was required by Insurance Law § 5106 (a).

In opposition, Triboro's attorney submitted an affirmation in which he asserted that Triboro's defenses were not waived, and were not "constrained by any time limit," where, as here, the insurer alleged that the patient's condition was entirely unrelated to the accident. According to counsel, Figuerdov had previously suffered from an unspecified "brain disorder * * * manifested by seizures and hospitalizations." Therefore, her "treatment and hospitalization in Mount Sinai was [sic] for a condition that was not incurred on defendant's bus." In support of his contention, counsel appended, inter alia:

(1) A one-page, unsigned excerpt from Figuerdov's Bellevue Hospital record, documenting an out-patient visit on December 12, 1996. According to this sheet, Figuerdov had been diagnosed in 1977 as suffering from a "Complex Partial Seizure" disorder (i.e., epilepsy [Dorland's Medical Dictionary 1503 (28th ed)]), since which time she had been on Dilantin. In November 1996 Figuerdov had experienced three "GTC" seizures (i.e., "generalized tonic-clonic," or "grand mal" convulsions [Dorland's, id., at 1503]), and the December 12, 1996, "Neuro Clinic" visit to Bellevue was by way of follow-up. The hospital record noted, inter alia, that Figuerdov had a pituitary tumor excised in 1992 following a diagnosis of acromegaly (an enlargement and coarsening of the facial features, hands and feet due to pituitary hypersecretion [Dorland's, id., at 20]).

(2) An unsworn letter-report from Triboro's orthopedic expert, Dr. Fishman, dated July 21, 1997. Dr. Fishman, who

complained that he had not yet received Figuerdov's full medical records, nonetheless gave a detailed outline of the patient's past medical history, including her 1992 pituitary surgery, which he claimed "indicat[ed] that there was a pre-existing problem concerning the brain." Notwithstanding the fact that "epilepsy" was foremost among Figuerdov's diagnoses on all of her medical records (including her date-of-accident Elmhurst Hospital emergency room chart), Fishman did not mention it. With specific regard to the head injury and ensuing surgery, Fishman repeatedly declared that he was unqualified to give an opinion—notwithstanding which he repeatedly suggested that Figuerdov's "brain" complaints, like her orthopedic ones, were most likely pre-existing and unrelated to the accident (*see, e.g.,* "Outside of the realm of my specialty I can not determine causal relationship concerning the head injury and surgery but * * * [t]he claimant seems to have been disabled prior to the above incident according to the records * * * Causal relationship [of the brain surgery] to the above accident can not be established as it is out of the realm of my specialty and the scant medical records that were provided seem to show serious pre-existing problems not related to this accident").

(3) Figuerdov's Elmhurst Hospital emergency room record following the bus accident. In his affirmation, the defendant's counsel stressed that Figuerdov had not been treated at Elmhurst Hospital for a head injury, while ignoring the emergency room record entry that Figuerdov reported hitting the right side of her head when she fell on the bus.

(4) Triboro's letters to Rovegno and Taylor, dated September 22, 1997, October 29, 1997, and December 22, 1997, regarding its requests for Figuerdov's records, films and authorizations.

In granting the plaintiff's motion for summary judgment, the Supreme Court observed, *inter alia,* that Figuerdov's Elmhurst Hospital emergency room record expressly noted that the patient hit the right side of her head when she fell on the defendant's bus. Even assuming, then, that Figuerdov had suffered from a prior brain condition, the court concluded that so far as could be ascertained from the record before it, the injury that Figuerdov had sustained on the defendant's bus could qualify as an aggravation of a preexisting condition, which was covered by no-fault insurance, even under the Court of Appeals most recent ruling in *Central Gen. Hosp. v Chubb Group of Ins. Cos.* (90 NY2d 195, *supra* [as discussed *infra*]).

Accordingly, the defendant's failure to pay or deny Mount Sinai's claim within the 30-day statutory period could not be

excused, and the defendant was precluded from interposing any defense to Mount Sinai's action.

We now affirm.

### THE STATUTORY FRAMEWORK

Insurance Law § 5106 (a) provides that payment of no-fault first-party benefits "shall be made as the loss is incurred." According to 11 NYCRR 65.15 (d) (6), "[i]n lieu of a prescribed application for motor vehicle no-fault benefits submitted by an applicant and a verification of hospital treatment (NYS Form N-F 4), an insurer shall accept a completed hospital facility form (NYS Form N-F 5) * * * submitted by a provider of health services with respect to the claim of such provider."

"Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained" (Insurance Law § 5106 [a]). Similarly, 11 NYCRR 65.15 (g) (3) provides: "Within 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part." A duly filed claim can only be properly denied "on the prescribed denial of claim form" (11 NYCRR 65.15 [g] [3] [i]). An insurer which fails to properly deny a claim within 30 days as required by these statutory provisions may be precluded from interposing a defense to the plaintiff's lawsuit (*see, e.g., Presbyterian Hosp. v Maryland Cas. Co.*, 90 NY2d 274; *Presbyterian Hosp. v Atlanta Cas. Co.*, 210 AD2d 210). The only statutory exception to this precise timetable is provided in 11 NYCRR 65.15 (d) (1), which reads: "Within 10 business days after receipt of the completed application for motor vehicle no-fault benefits, the insurer shall forward, to the parties required to complete them, those prescribed verification forms it will require prior to payment of the initial claim. The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Thereafter, "[s]ubsequent to the receipt of one or more of the completed prescribed verification forms, any additional verification required by the insurer shall be requested within 10 business days of receipt of the prescribed verification forms" (11 NYCRR 65.15 [d] [2]).

In this case, Triboro received Mount Sinai's N-F5, UB-92 and DRG forms on November 14, 1997. Triboro therefore had until November 24, 1997, to request "verification" from the hospital or, failing that, until December 14, 1997, to either pay or deny the claim in whole or in part. Triboro did none of these things.

## THERE WAS NO "TOLLING" OF THE STATUTORY DEADLINE

There is no merit to Triboro's contention that its letters to Rovegno and Taylor, Figuerdov's personal attorneys, operated as requests for "verification" so as to enlarge its time to deny Mount Sinai's claim (*see, e.g., Keith v Liberty Mut. Fire Ins. Co.,* 118 AD2d 151). These so-called "verification" requests were not on the forms prescribed by statute, were not addressed to Mount Sinai, and did not request any information from Mount Sinai relative to that facility's claim. In addition, the first two requests on September 22, 1997 and October 29, 1997 predated Mount Sinai's November 11 service of its N-F5 and other forms, while the last request on December 22, 1997, fell beyond the December 14, 1997, deadline. Mount Sinai may not be penalized for any alleged "lack of cooperation" by Figuerdov or her private attorneys (*see, e.g., Maxwell v State Farm Mut. Auto. Ins. Co.,* 92 AD2d 1049). In any event, the correspondence invoked by Triboro establishes that Rovegno and Taylor were cooperative, and supplied Triboro with all of the films, medical records, and authorizations that it requested.

We additionally note that on this appeal the defendant raises new challenges to the adequacy of Mount Sinai's claim forms, including an alleged absence of necessary signatures and lack of sufficiently specific medical information. Triboro did not previously object to the propriety of the plaintiff's no-fault billing forms, and may not now advance arguments that were not articulated before the Supreme Court (*see, e.g., Gintell v Coleman,* 136 AD2d 515; *Block v Nelson,* 71 AD2d 509; *Mulligan v Lackey,* 33 AD2d 991, 992). Besides, it has been held that the insurer's failure to raise such objections within the 10-day verification period constitutes a waiver of any defenses based thereon (*see, e.g., Presbyterian Hosp. v Aetna Cas. & Sur. Co.,* 233 AD2d 433; *St. Clare's Hosp. v Allcity Ins. Co.,* 201 AD2d 718; *see also, Matter of Fireman's Fund Ins. Co. v Freda,* 156 AD2d 364; *Fabian v MVAIC,* 111 AD2d 366; 11 NYCRR 65.15 [g] [3]).

Accordingly, unless Triboro can establish that it qualifies for the narrow exception carved out by the Court of Appeals in *Central Gen. Hosp. v Chubb Group of Ins. Cos.* (90 NY2d 195, *supra*), it must be precluded from raising any defense to Mount Sinai's action because of its failure to deny the hospital's claim within the statutorily prescribed 30 days.

### THE CENTRAL GENERAL CASE

In *Central General (supra)*, the plaintiff hospital provided treatment to Pamela Mandresh on four separate occasions for

injuries allegedly sustained in an automobile accident. When Chubb, the insurer of the car Mandresh had been driving at the time of her accident, failed to pay or deny the hospital's claims within 30 days, and failed to request verification within 10 days, the hospital sued and then moved for summary judgment. The Supreme Court granted the hospital's motion on the ground that Chubb was precluded from disclaiming coverage for its failure to adhere to the statutory timetable, and the Appellate Division affirmed.

In reversing, the Court of Appeals declared, in line with its previous decisions in *Zappone v Home Ins. Co.* (55 NY2d 131) and *Schiff Assocs. v Flack* (51 NY2d 692), that the preclusion remedy did not apply to a defense of no coverage at all. That is, an insurer's mere tardiness in disclaiming does not create coverage where no coverage otherwise exists as, for example, where the event, the vehicle, the person, or, according to the *Central General* Court, the injury is outside the ambit of the policy purchased by the insured. Mandresh, a letter carrier for the United States Postal Service, had been injured on the job and had been out of work for a year before her automobile accident, collecting workers' compensation disability payments for precisely the same injuries for which Central General was seeking no-fault benefits. Indeed, Chubb documented that, after both her work-related accident and the subsequent automobile collision, Mandresh was treated by the same physician for an identical "cervical spine torticollis" condition (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 198). Under these circumstances, the Court of Appeals ruled, summary judgment was improperly granted to the plaintiff hospital, and Chubb should be allowed to raise its defense of noncoverage notwithstanding its failure to disclaim within the 30-day statutory period.

That said, the *Central General* Court did not elaborate upon what kinds of medical conditions can trigger the exemption from preclusion. It is clear from the text of Central General that an insurer may not claim this "exceptional exemption" on the ground or to the extent that the treatment rendered was somehow excessive or unnecessary (*see, e.g., Country-Wide Ins. Co. v Zablozki,* 257 AD2d 506). The majority further declined to extend the exemption to "aggravation[s] of [pre-existing] injuries" (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 202), which remain strictly covered by the no-fault legislation. Accordingly, it would appear that the *Central General* exception applies only where the medical condition for which

the patient was treated was not "related to the accident at all", as Triboro's counsel conceded in his affirmation in opposition to the plaintiff's motion for summary judgment.

But how does an insurer establish that a patient's medical treatment was for a condition unrelated to his or her accident? The Court of Appeals has instructed as follows: "We are persuaded that an insurer, despite its failure to reject a claim within the 30-day period prescribed by Insurance Law § 5106 (a) and 11 NYCRR 65.15 (g) (3), may assert a lack of coverage defense premised on the fact or founded belief that the alleged injury does not arise out of an insured incident. The denial of liability based upon lack of coverage within the insurance agreement, as framed in part by the litigation strategy and nature of the instant dispute, is distinguishable from disclaimer attempts based on a breach of a policy condition (*see, Zappone v Home Ins. Co., supra,* 55 NY2d, at 136-137; *contrast, Presbyterian Hosp. v Maryland Cas. Co.,* 90 NY2d 274 [decided today]). Precedent and logical analysis support the extension of the *Zappone* exception here. Strict compliance with the time requirements of both the statute and regulations may be obviated and the preclusion remedy rendered unavailable when denial of claims is premised on a lack of coverage" (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 199).

This passage makes clear that the insurer's assertion of entitlement to the "exceptional exemption" carved out by *Central General (supra)* must be premised on facts or else on a belief founded on facts. While it may be argued that the exceptional exemption first outlined in *Schiff (supra)* and *Zappone (supra)* is reserved for "pure matters of coverage" rather than "factual disputation[s]" (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 202), clearly the question of whether an injury was entirely preexisting (i.e., not covered) or was in whole or in part the result of an insured accident (i.e., covered) is hybrid in nature, and cannot be resolved without recourse to the medical facts. This conclusion is compelled by the very language of *Central General,* which permits an insurer to claim the exemption only if it can show that its diagnosis of the plaintiff's condition is "premised on *the fact or founded belief* that the alleged injury does not arise out of an insured incident" (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 199 [emphasis supplied]).

Logically, then, the defendant has the burden to come forward with proof in admissible form to establish "the fact" or the evidentiary "found[ation for its] belief" that the patient's

treated condition was unrelated to his or her automobile accident (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra; compare,* CPLR 3215, 317, 5015 [a] [1]).

Notwithstanding Triboro's repeated arguments to the contrary, it would not be reasonable to insist that a plaintiff hospital must prove as a threshold matter that its patient's condition was "caused" by the automobile accident and was unrelated to his/her entire previous medical history. The policy concerns underlying the no-fault legislation would thereby be undermined, and insurers would be motivated to refrain from issuing timely disclaimers in order to impose such an onerous threshold burden upon claimants.

### THIS CASE

Applying the foregoing principles to the case before us, it is apparent that the defendant has failed to demonstrate its entitlement to exemption from defense-preclusion following its untimely rejection of Mount Sinai's claim. It has presented no sworn statement from anyone with knowledge of the facts or with appropriate expertise to render an opinion. In addition, the medical theories the defendant *does* advance are vague, conclusory, inconsistent, and unsupported by the record.

Figuerdov's hospital records indicate that she had a history of grand mal epilepsy dating back to 1977. She had also had an unrelated tumor on her pituitary gland excised in 1992. In March 1997 Mount Sinai operated to remove a trauma-induced subdural hemorrhage, which had apparently been caused when Figuerdov hit her head during the bus accident of January 3, 1997. Certainly her records reflect that she began consulting her doctor three days after the bus accident, complaining of new neurological symptoms which she herself attributed to the trauma she had received on the bus.

Triboro has presented no evidence whatsoever linking these three brain conditions (epilepsy, pituitary tumor, and hemorrhage). The only medical opinion it has adduced is an unsworn letter from its own *orthopedist*, who repeatedly declares that he is not qualified to diagnose brain conditions, but who just as often insinuates that maybe Mount Sinai bored burr holes into Figuerdov's head because of "a pre-existing problem concerning the brain."

Indeed, this case is a vivid illustration of why an expert's affidavit will usually be necessary to effectively establish the basis of an insurer's founded belief. Here, neither the defendant's counsel nor its doctor ever mentioned epilepsy. In its op-

position to the plaintiff's motion, Triboro urged that the seizure disorder was the preexisting condition, while on appeal it suggests for the first time, and without any support in the medical evidence, that Mount Sinai operated on Figuerdov for a brain tumor. The judiciary cannot allow itself to be in the position of having to decide such difficult issues without the benefit of any evidence, but solely on the basis of a defendant's speculation or wishful thinking. Only an expert's affirmation can give the courts the proper guidance in such specialized scientific matters, and can provide, in the majority of instances, a proper factual foundation for an insurer's good faith belief that "the alleged injury does not arise out of an insured incident" (*Central Gen. Hosp. v Chubb Group of Ins. Cos., supra,* at 199).

Accordingly, as Triboro has failed to adduce convincing admissible evidence that Figuerdov's treatment by the plaintiff was "unrelated" to her automobile accident in opposition to the plaintiff's motion for summary judgment, the order appealed from is affirmed.

Joy, J. P., Schmidt and Smith, JJ., concur.

Ordered that the order is affirmed, with costs.