OPINION OF THE COURT
Charles J. Markey, J.
This case raises an issue of first impression in this state concerning the ability of a healthcare provider to bill and recover for professional services, performed under the no-fault insurance benefits statute, where he delegated a portion of the work to an aide in his office, while retaining active supervision.
Upon the foregoing papers, defendant Liberty Mutual Insurance Company (Liberty) moves to reargue a decision of this court (Ronald D. Hollie, J.), granting summary judgment, on default, to plaintiff Dr. Steven Yellin (Yellin), a psychologist.
First, this case raises a procedural twist governing a motion to reargue under CPLR 2221 (a). In this case, Judge Hollie, on *286 June 6, 2000, granted plaintiffs motion for summary judgment on default, permitting plaintiff to enter a judgment in the amount of $886.32, with statutory interest from September 9, 1998. The order was entered by the clerk on June 7, 2000. Plaintiffs counsel, however, did not serve notice of entry until February 7, 2002, almost two years after the court had issued its order. Defendant’s present motion to reargue, by motion served on March 4, 2002, is timely. However, in the interim, Judge Hollie left this court. Specifically, on or about January 1, 2001, he assumed the office of an elected justice of the Supreme Court of this state.
First, the motion to reargue is timely since it was served within 30 days of the service of a copy of the order with notice of entry (CPLR 2221 [d] [3]; Matter of Pearson v Goord, 290 AD2d 910 [3d Dept 2002]; Glicksman v Board of Educ. / Cent. School Bd. of Comsewogue Union Free School Dist., 278 AD2d 364, 365 [2d Dept 2000]).
Ordinarily, a motion to reargue would be entertained by the judge who made the original decision. Out of respect and deference to the judge who issued the initial order, my chambers and that of the supervising judge of this court (Jeremy S. Weinstein, J.) asked Justice Hollie whether he wanted to hear the reargument motion, and Justice Hollie declined the invitations.
CPLR 2221 (a) (1) provides that if the original order was made on default, as occurred here, the motion to reargue can be made “to any judge of the court.” Thus, this court’s request to Justice Hollie was made out of deference and courtesy, not as a result of legal requirement and necessity, since, under the provisions of CPLR 2221 (a), this court was entitled to hear the reargument motion. This court, accordingly, by an interim order dated June 24, 2002, granted the motion to reargue, and, upon reargument, directed oral argument on the underlying summary judgment motion, which was held by this court on July 11, 2002.
Turning to the heart of this case, defendant insurer advances two interesting and novel claims. Defendant first contends that Dr. Yellin cannot recover no-fault benefits for work he delegated to an aide in his office. Second, in an effort to overcome the general rule mandating that an insurer disclaim coverage within 30 days, the insurer argues that since the doctor was billing for services not performed by him personally, the bill was therefore not in such legally presentable shape so as to have started the 30-day clock to run.
With regard to the first claim, although defendant has submitted for the court’s review a host of regulations, none of *287 the materials proffered bars a doctor from delegating work to another person in . his office for which the doctor is willing to assume personal responsibility, so long as an unlicensed or unauthorized practice of a profession is not implicated. The work of the most consummate of professionals cannot be performed unless some delegation of tasks is done. To whom a professional delegates the work and trusts to do the job is the professional’s responsibility.
In the present case, Dr. Yellin had been referred the case of Dwayne Davis, a teenager, who had been involved in an automobile accident and was manifesting certain symptoms that required a psychologist’s help. Dr. Yellin entrusted Ellen Cooper, a psychology intern with a Master’s degree to perform certain tests on Mr. Davis. Dr. Yellin’s report states that the tests administered by Ms. Cooper were performed under his personal supervision. Dr. Yellin analyzed the tests, prepared the report that bears his name and, by his signature, assumes responsibility for its contents, prepared the diagnosis, conclusions, and recommendations contained in it.
This court’s legal research, searching nationwide for cases, has not found any case on point. Because of the dearth and paucity of authority on the subject, both sides cite Rombom v Interboro Mut. Indem. Ins. Co. (170 Misc 2d 846 [Civ Ct, Queens County 1996]), the only case that is even remotely on point. There, Dr. Howard Rombom, a psychologist, delegated work to a psychometrician, Jennifer Gambino, consisting of administering psychological tests to a patient. The services performed by the psychometrician were not performed in the doctor’s offices, Dr. Rombom was physically not present when the tests were being administered, and the essential contact between Dr. Rombom and Ms. Gambino consisted of one telephone call. Despite the brevity of contact, Dr. Rombom felt unconstrained to submit no-fault insurance bills of $957.60, based upon eight hours of “work” billed at his time of $119.70 per hour. Dr. Rombom was paying Ms. Gambino, however, only $25, netting him a hefty profit. On top of all these facts, despite the eight hours of work, the test results and psychological evaluations were never made known to the patient.
It is assumed in the present case that Dr. Yellin is making a profit by delegating work to Ms. Cooper, while billing at certain hourly rates acceptable to the insurer. This case differs markedly from Rombom. In the present case, the tests, unlike those in Rombom, were performed in Dr. Yellin’s office, with him being close by, if needed during the administration of the tests. *288 Ms. Cooper provided the doctor with the raw data, responses, and information garnered from Mr. Davis, the patient. Yet, the patient’s responses were interpreted and evaluated by Dr. Yellin.
Dr. Yellin, by asking Ms. Cooper to collect responses from a patient, while he is in close proximity in his suite, attending to responsibilities that cannot be delegated to other persons, makes good sense. Ms. Cooper’s degree in psychology was undoubtedly useful to Dr. Yellin in helping his professional practice. She administered tests and may have even prepared parts of reports for his review and signature. Dr. Yellin, by certifying to the diagnosis contained in the report, as well as its other contents, accepts full responsibility therefor. He is entitled to be compensated for such services.
The services in the present case were performed in Dr. Yellin’s office on June 30 and July 22, 1998. Dr. Yellin sent his bill to the insurer on August 10, 1998, and it was actually received by the insurer on August 14, 1998. The insurer denied the claim on October 16, 1998.
Under regulations and a well-established line of authority, an insurer is generally precluded from raising any defenses where a denial is not made within 30 days of receipt of the claim (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997]; New York Hosp. Med. Ctr. of Queens v Country-Wide Ins. Co., 295 AD2d 583 [2d Dept 2002]; 11 NYCRR 65.15 [g] [3]; see also Liberty Queens Med. v Tri-State Consumer Ins., 188 Misc 2d 835 [Nassau Dist Ct, 2001]; 11 NYCRR 65.15 [d], [e]).
Defense counsel creatively argues that the court not apply the 30-day general bar so as to preclude the insurer, contending that the requirement that the physician actually see the tests being performed is “a condition precedent to payment” (affirmation of Michael R. Janes, Esq., dated Mar. 4, 2002, ¶ 12). Although citations follow the argument, none of the authorities are apposite.
To the extent that defense counsel by his “condition precedent” argument is alluding to a line of New York cases holding that a failure to disclaim timely will not create insurance coverage that did not exist (see Burt Rigid Box v Travelers Prop. Cas. Corp., 126 F Supp 2d 596, 632 [WD NY 2001] [applying New York law]; Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]; Zappone v Home Ins. Co., 55 NY2d 131 [1982]; see also Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185 [2000]; Mount Sinai Hosp. v Triboro Coach, 263 *289 AD2d 11, 17-19 [2d Dept 1999]; Eveleno v Colonial Penn Ins. Co., 188 Misc 2d 454, 457-461 [Civ Ct, Queens County 2001]), those cases are simply inapplicable.
A billing psychologist is entitled to compensation under applicable law, and, if an insurer has any objection to make, it ought to be vigilant and either make prompt protest or retard the process by demanding further clarification and verification (see 11 NYCRR 65.15 [d] [1]; [e]; see e.g. New York Hosp. Med. Ctr. of Queens, 295 AD2d 583, supra [billing under wrong code]; New York & Presby. Hosp. v American Tr. Ins. Co., 287 AD2d 699, 701 [2d Dept 2001]). Indeed, the insurer’s denial of October 16, 1998 stated:
“Based on our IME [independent medical examination] report and your initial report, services were rendered by an intern. The claimant was unaware of intern [sic] status, not made of same [sic] therefore we cannot ascertain the supervisory role provided. The patients [sic] assignment of benefits makes no mention of services of an intern.”
Here, the insurer fails to provide an explanation for why the matter comprising its rejection could not have been made on a timely basis. Putting aside for argument’s sake this court’s holding that a doctor can recover for services delegated, in part, to an aide in his office and of which he retains active supervision, the insurer, bluntly, was “asleep at the switch” (see Presbyterian Hosp. in City of N.Y., 90 NY2d at 280 [“the carrier chose to sit on its rights”]). Alert monitoring would have avoided subsequent excuses.
Accordingly, the defendant’s motion to reargue is granted, and, upon reargument, the court adheres to the original determination, made by the court (Hollie, J.), on June 6, 2000, and entered on June 7, 2000, granting summary judgment to the plaintiff.