McCooe, J.
(concurring). The majority opinion raises two issues common to numerous first-party no-fault benefit actions, the admissibility of a “low-impact study” and the scope of a Chubb no coverage defense (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]). Since there may be a disagreement with this court and the Appellate Term, Second and Eleventh Judicial Districts, on the first issue and there is a disagreement with both on the second issue, I am writing separately to state my opinion.
First, since the low-impact study is being rejected as a defense in this summary judgment motion as a matter of law, I will accept as true the statement of facts relied upon by defendant’s expert, Alfred Cipriani, employed by SEA and the procedures adopted in his project summary which reads in pertinent part:
“I. PROJECT SUMMARY
“PROJECT ASSIGNMENT
“On January 21, 2004, SEA, Ltd. (SEA) was asked to review file material related to a two-vehicle accident that occurred on November 27, 2003, in Bronx, New York. At approximately 6:50 a.m., Mr. Mahamdou Hydara, driving a 1999 Ford Explorer (Ford) owned by Mr. Sulayman Kamara, was traveling southbound on Throgs Neck Expressway, ap *102 proaching the Throgs Neck Bridge toll plaza. A 1991 Volkswagen Jetta (Volkswagen), driven by Ms. Theresa Marone, changed lanes and struck the driver’s side of Mr. Hydara’s Ford. As a result of the impact to his vehicle, Mr. Hydara was allegedly injured. This investigation was assigned to the direction of SEA Technical Consultant/Accident Reconstructionist Alfred L. Cipriani, ACTAR, as SEA Project No. 603622.
“SCOPE OF PROJECT
“Specifically, SEA was asked to consult with respect to this accident, to determine the Ford’s average accelerations, and to compare those results with published crash test studies.
“CONCLUSIONS
“• The average rearward acceleration of Mr. Hydara’s Ford was no more than 0.3 g for a duration of approximately 100 milliseconds (msec) during the collision of November 27, 2003.
“• The average left-to-right acceleration of Mr. Hydara’s Ford was no more than 0.3 g for a duration of approximately 100 msec during the collision of November 27, 2003.
“• The cited scientific research shows that the average accelerations of Mr. Hydara’s Ford posed virtually no risk of injury to volunteer test subjects.
“II. PROCEDURES
“1. SEA reviewed file material related to this accident including:
“• Police Accident Report (NYC) # 3641
“• Report of Motor Vehicle Accident completed by Mr. Hydara
“• Insured’s Supplementary Accident Report completed by Mr. Hydara
“•A repair estimate for the Ford
“•A prior damage estimate for the Ford
“•A description of the accident
“• Four color photocopied photographs of the Ford
“• A copy of the written statement of Mr. Hydara
“• A copy of the written statement of Mr. Kamara
“2. SEA researched specifications and crash test data for the vehicles involved in this accident.
“3. SEA calculated crush stiffness coefficients for *103 the vehicles involved in this accident.
“4. SEA performed a low speed impact analysis[1] to determine the Ford’s average accelerations.
“5. SEA reviewed published volunteer test studies involving low speed impacts.”
Cipriani also relied upon Hydara’s statement of facts regarding the accident. The police report indicates that the “cost of repairs to any one vehicle will be more than $1000.00.”
The “Methods of Analysis” is an “engineering analysis of low-speed impacts, depending on the nature of the impact.” There are four types of impacts referred to: bumper to bumper, override and underride, lateral impacts, and sideswipes. While it states that “SEA engineers chose an engineering analysis method most appropriate for the type of impact being studied,” after carefully reviewing the facts, it is not stated which type they are relying on, but I assume it is “lateral impacts” where “it is important to determine the side stiffness for the appropriate vehicle” and “average lateral acceleration must also be reduced by an amount equivalent to the sideways sliding resistence of the vehicle tires.”
Finally the “Signatures” page states that: “SEA did not perform a medical file review or an assessment of injuries alleged by Mr. Hydara. SEA hereby certifies the expressed opinions and conclusions have been formulated within a reasonable degree of professional certainty.”
The Appellate Term, Second and Eleventh Judicial Districts, has held that a low-impact study may constitute a proper basis for denial of a summary judgment motion provided it is in admissible form[2] (see AB Med. Servs. PLLC v New York Cent. Mut. Fire Ins. Co., 12 Misc 3d 140[A], 2006 NY Slip Op 51347[U] [App Term, 2d & 11th Jud Dists 2006]). It relied on Appellate Division analysis in determining that an accident analysis report is relevant to the issue of causation (see Ocean Diagnostic Imaging P.C. v New York Cent. Mut. Fire Ins. Co., 7 Misc 3d 129[A], 2005 NY Slip Op 50525[U] [App Term, 2d & 11th Jud Dists 2005], citing Valentine v Grossman, 283 AD2d 571 [2d Dept 2001]). Furthermore, referring to the coverage defense, a low-impact study has been found to be “sufficient to demonstrate *104 that the defense was based upon a ‘founded belief that the alleged injur [ies] do[ ] not arise out of an insured accident’ ” (Ocean Diagnostic Imaging P.C. v New York Cent. Mut. Fire Ins. Co., 2005 NY Slip Op 50525[U],*2 [2005],[3] quoting Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]).
The first issue here is whether Cipriani’s affidavit, together with the low-impact study report, were sufficient to raise an issue of fact to defeat plaintiffs motion for summary judgment. After analyzing the police report, repair estimates, written statements made by the drivers, and photographs of the Ford, Cipriani opined that the “average acceleration of [assignor’s] Ford posed virtually no risk of injury to volunteer test subjects.” There is no indication that he factored in the Ford striking the toll booth barrier as affecting the “average acceleration.” He did not (1) calculate the forces generated by the accident, (2) correlate the forces to the injuries allegedly sustained by the plaintiff nor (3) conclude that there was not enough force generated in the collision to cause said injuries (cf. Valentine v Gross-man, 283 AD2d at 572 [biomechanical experts correlated the forces generated by the collision to the injuries allegedly sustained by the injured plaintiff and opined that there was not enough force generated to cause said injuries]).
The low-impact study report states that neither a medical file review nor an assessment of the injuries alleged by the plaintiff was performed and did not indicate whether the plaintiff was wearing a seat belt. Therefore he did not know if the claimed injuries were merely bruises and contusions or a fracture when he arrived at his conclusion. This distinguishes Valentine v Grossman (283 AD2d 571 [2001]), where the expert rendered an opinion as to whether there was sufficient force to cause a herniated disc.
Cipriani’s study is general and not specific to the plaintiff but to “volunteer test subjects” whose age and state of health is not indicated so as to form a proper basis for comparison. The report does not and could not explain how the low-impact test results demonstrated that the unknown plaintiffs injuries were unrelated to the subject accident. While Cipriani opined that the acceleration of the plaintiffs vehicle “posed virtually no risk of injury,” he did not give an opinion as to whether this particular accident caused the injuries allegedly sustained by the plaintiff. *105 Therefore the study was too vague and conclusory to raise a triable issue of fact or to support the defendant’s conclusion that the accident was not severe enough to have caused the injuries allegedly sustained (see Bender v Gross, 33 AD3d 417 [1st Dept 2006]; Maggiotta v Walsh, 306 AD2d 447 [2d Dept 2003] [vague and conclusory expert affidavit submitted in opposition to summary judgment motion failed to raise a triable issue of fact regarding causation]).
The second issue is whether the defense raised is properly a lack of coverage defense as discussed in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]) or a disclaimer based on the breach of a policy condition. I disagree with the majority and the Appellate Term, Second and Eleventh Judicial Districts, that it is a lack of coverage defense. Furthermore it should not be an issue here since neither the Civil Court nor the parties contend that it is. This should explain why the “description of the defense . . . as a lack of coverage defense” (majority op at 100-101) first raised by the majority was not briefed. The defendant timely filed three denial of claim forms within the 30-day rules and regulation period which read in part: “the results of a low-impact study conducted by this company, has shown that the injuries you allege are not related to the motor vehicle accident of 11/27/2003 and are inconsistent with a collision of this nature . . . .”
Nevertheless, since the majority agrees with the Appellate Term, Second and Eleventh Judicial Districts, on this issue, I will explain the reasons for my disagreement. The principal reason is that the “exceptional exemption” granted in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]) when the insurer fails to timely disclaim should be limited to factual situations where the defense is that the injuries predated the accident in order to find that they were “causally unrelated to the accident.”
The relevant portion of the decision in Ocean Diagnostic Imaging P.C. v New York Cent. Mut. Fire Ins. Co. (7 Misc 3d 129[A], 2005 NY Slip Op 50525[U],*l-2 [2005]) reads:
“Inasmuch as defendant failed to pay or deny the claim within the 30-day [prescribed] period [11 NYCRR 65-3.8(c), and did not adequately establish that such period was extended by its issuance of a timely request for verification (11 NYCRR 65-3.5 [a], [b])], it [was] precluded from raising most de *106 fenses (see Presbyterian Hosp. in City of N.Y.v Maryland Cas. Co., 90 NY2d 274, 282 [1997]).
“However,; defendant [was] not precluded from asserting the defense that the alleged injuries were . . . causally [unrelated to the accident [despite the untimely denial of the claim] (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]; Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 18-19 [1999]). The ‘Accident Analysis’ report, referred to by defendant as a ‘Low Impact Study’ [accompanied by an affidavit] of the Technical Consultant/Accident Reconstructionist who prepared the report . . . was sufficient to demonstrate that the defense was based upon a 'founded belief that the alleged injuries] dot 7 not arise out of an insured incident’ (Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d at 199 . . . ). [Accordingly], since defendant demonstrated the existence of a triable issue of fact as to whether there was a lack of coverage (see Zuckerman v City of New York, 49 NY2d 557 [1980]), plaintiff’s motion for summary judgment [should not have been granted and the matter is remanded for further proceedings].” (Emphasis added.)
The Ocean case clearly expresses the legal issues under discussion. The two cases relied upon in Ocean are Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]) and Mount Sinai Hosp. v Triboro Coach (263 AD2d 11 [1999]).
I agree that the Ocean case cites the applicable law but I disagree with the interpretation and that they are factually similar to Ocean or this case. They are both factually dissimilar because both defendants in the cited cases claimed that there was no coverage because the claimed injury predated the accident. The defendant in Chubb successfully claimed that the “injuries were sustained in a separate work-related accident about a year prior to the automobile accident” and the Court found that the untimely disclaimer was an “exceptional exemption” that did not prevent the defendant from raising the lack of coverage defense because the injury was unrelated to the accident (Chubb, 90 NY2d at 198).
The defendant in Mount Sinai unsuccessfully claimed that the plaintiff’s condition was entirely unrelated to the accident because she “had previously suffered from an unspecified ‘brain disorder . . . manifested by seizures and hospitalizations’ ” and her condition was not incurred in the accident (Mount Sinai, *107 263 AD2d at 14). The Court held that the “exceptional exemption” from preclusion for failure to timely disclaim “applies only where the medical condition for which the patient was treated was not ‘related to the accident at all’ ” (Mount Sinai, 263 AD2d at 18-19). The Court goes on to state that the issue cannot be resolved without resort to the medical facts and that the “defendant has the burden to come forward with proof in admissible form to establish ‘the fact’ or the evidentiary ‘found[ation for its belief]’ that the patient’s treatment was unrelated to his or her automobile accident” (Mount Sinai, 263 AD2d at 19-20). Speaking as to the need for medical proof, the Court goes on to state, “Indeed, this case is a vivid illustration of why an expert’s affidavit will usually be necessary to effectively establish the basis of an insurer’s founded belief” (Mount Sinai, 263 AD2d at 20).
Based upon the foregoing, I disagree that a “low-impact study” can be the basis for a “founded belief’ that the alleged injuries are “not related to the accident at all” and form the basis for a lack of coverage defense. This “exceptional exemption” first spelled out in Chubb and later in Mount Sinai only applies where the defendant comes forward with medical proof for its founded belief that the medical treatment was not related to the accident at all “but to a previous injury or condition.”
The overly broad characterization of a breach of policy condition or policy exclusion as a coverage defense nullifies the 30-day disclaimer rule.
McKeon, P.J., and Schoenfeld, J., concur; McCooe, J., concurs in a separate opinion.

. A. Toor et al., Practical Analysis Technique for Quantifying Sideswipe Collisions, SAE Paper 1999-01-0094, 1999.

. The Civil Court determined that Mr. Cipriani’s affidavit, which referenced and attached the low-impact study report, was in admissible form and plaintiff does not challenge this finding or the admissibility of the report.

. The Ocean case will be discussed in greater detail on the coverage issue.