[871 NYS2d 680]

Kingsbrook Jewish Medical Center, as Assignee of Thresiamm Valiyaparambil, et al., Respondents, v Allstate Insurance Company, Appellant.

Second Department, January 20, 2009

**APPEARANCES OF COUNSEL**

*Stern & Montana, LLP*, New York City (*Richard Montana* of counsel), for appellant.

*Joseph Henig, P.C.*, Bellmore, for respondents.

**OPINION OF THE COURT**

DILLON, J.

We are asked to determine whether the definition of diagnosis and procedure codes adopted by the United States Department of Health and Human Services (hereinafter HHS) as part of its regulatory authority may be a proper subject for judicial notice under CPLR 4511. If so, we must also determine whether the defined diagnostic codes, in and of themselves, permit a finding that a patient's hospital care and treatment is wholly outside the scope of no-fault automobile coverage. Until now, we are not

aware of any appellate court that has addressed the issue of whether the diagnosis and procedure codes key of the United States government can be judicially noticed by courts, so that it may then be used to decipher no-fault billing forms.

## I. Relevant Facts

On July 3, 2006, George Hafford was injured in an automobile accident and received treatment at the plaintiff White Plains Hospital Center (hereinafter White Plains Hospital) from the date of the accident until August 22, 2006. Hafford was insured by the defendant, Allstate Insurance Company (hereinafter Allstate), under an automobile liability insurance policy that contained a no-fault endorsement. White Plains Hospital rendered a bill for its services to Hafford in the total sum of $26,979.83. Hafford assigned to White Plains Hospital the right to seek reimbursement from Allstate for the amount billed.

On November 7, 2006, White Plains Hospital, as assignee of Hafford, mailed to Allstate by certified mail, return receipt requested, NF-5 and UB-92 forms demanding payment of the sum of $26,979.83. The UB-92 form contained code numbers to identify the diagnoses that had been made of Hafford's conditions and the treatments provided to him in furtherance of the diagnoses. The delivery of the forms to Allstate on November 8, 2006 is not at issue. White Plains Hospital alleges that pursuant to Insurance Law § 5106 (a) and 11 NYCRR 65-3.8 (a) (1), Allstate's payment of no-fault benefits became due on December 8, 2006, but Allstate failed to make payment or issue a denial of claim.

This action ensued. Allstate's answer to the complaint set forth 11 affirmative defenses, including the "fourth" affirmative defense that the injuries for which Hafford received treatment did not arise out of the use or operation of an insured motor vehicle and, as such, are not covered by its policy of insurance.

The plaintiffs moved for summary judgment, submitting, in connection with the third cause of action asserted by White Plains Hospital, documentary evidence to establish the service by White Plains Hospital upon Allstate of the required billing documents for no-fault reimbursement and Allstate's failure to either pay the claim or issue an appropriate denial. Allstate opposed the motion and, by cross motion, sought summary judgment in its favor dismissing the complaint. With respect to the third cause of action asserted by White Plains Hospital, Allstate

argued that it was entitled to summary judgment on the ground that the treatment afforded to Hafford was unrelated to his motor vehicle accident. Specifically, Allstate's counsel provided the court with the diagnosis and procedure codes key from the official Web site of HHS, Centers for Medicare and Medicaid Services. Allstate requested that the Supreme Court take judicial notice of the codes and their definitions, as public documents. According to the codes key, Hafford's diagnoses and treatment at White Plains Hospital included rapid heart rate associated with infection, acute and chronic respiratory failure, heart damage caused by alcoholism, convulsions, potassium deficiency, blood poisoning, brain damage caused by lack of oxygen, and expectoration of blood. Allstate's counsel argued, without a supporting affidavit from a medical expert, that these code-defined conditions could not have been related to the automobile accident or, at least, raised an issue of fact as to whether the conditions arose from the accident.

The plaintiffs opposed Allstate's cross motion for summary judgment by raising two principal arguments in connection with the third cause of action. First, White Plains Hospital argued that the interpretation of the billing codes cannot be judicially noticed as it does not rest upon knowledge or sources widely accepted as unimpeachable. Second, White Plains Hospital argued that Allstate's counsel was not qualified as a medical expert to render an opinion on whether the hospital's care and treatment was, or was not, related to the underlying automobile accident.

In the order appealed from dated November 15, 2007, the Supreme Court held, with respect to the third cause of action, that White Plains Hospital established its demand upon proper forms that Allstate pay the sum of $26,979.83, and that Allstate failed to pay the claim or issue a denial of claim within the required 30 days thereafter (2007 NY Slip Op 34402[U]). With respect to Allstate's opposition and the cross motion, the Supreme Court implicitly took judicial notice of the HHS codes key and held that counsel's affirmation, which argued that invoiced treatment was unrelated to the automobile accident, was medically insufficient. The Supreme Court, inter alia, granted that branch of the plaintiffs' motion which was for summary judgment on the third cause of action asserted by White Plains Hospital. For the reasons set forth below, we affirm the order insofar as appealed from.

## II. The Payment of First-Party Benefits Under Insurance Law § 5106

Article 51 of the Insurance Law is known as the "Comprehensive Motor Vehicle Insurance Reparations Act" and is commonly referred to as the "No-Fault Law." The purpose and objective of this statute is to " 'assure claimants of expeditious compensation for their injuries through prompt payment of first-party benefits without regard to fault and without expense to them' " (*New York Hosp. Med. Ctr. of Queens v Motor Veh. Acc. Indem. Corp.*, 12 AD3d 429, 430 [2004], quoting *Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 225 [1986]).

Section 5106 of article 51 is entitled "Fair claims settlement" and provides, in pertinent part, that

> "(a) Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied. All overdue payments shall bear interest at the rate of two percent per month. If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations."

Pursuant to the statutory and regulatory framework governing the payment of no-fault benefits, insurance companies are required either to pay or deny a claim for first-party benefits within 30 days of receipt of the claim (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c]; *Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d 556, 563 [2008]; *Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co.*, 44 AD3d 903 [2007]; *New York & Presbyt. Hosp. v Progressive Cas. Ins. Co.*, 5 AD3d 568, 569 [2004]). Within 10 business days after receipt of the claim notice, the insurer may send an initial request for verification of the claim (*see* 11 NYCRR 65-3.5 [a]). After receipt of verification, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt (*see* 11 NYCRR 65-3.5 [b]). The 30-day period in which to either pay or deny a claim is

extended where the insurer makes a request for additional verification within the requisite 15-day time period (*see Montefiore Med. Ctr. v Government Empls. Ins. Co.*, 34 AD3d 771 [2006]; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 31 AD3d 512 [2006]). Thus, a timely additional verification request tolls the insurer's time within which to pay or deny a claim (*see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563; *New York & Presbyt. Hosp. v Countrywide Ins. Co.*, 44 AD3d 729, 730 [2007]).

Eleven years ago, the New York Court of Appeals carved out a narrow exception to the requirement that an insurer must pay or deny a claim within the 30-day period prescribed by the No-Fault Law. The Court of Appeals held that an insurer "may assert a lack of coverage defense premised on the fact or founded belief that the alleged injury does not arise out of an insured incident" (*Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195, 199 [1997]; *see Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563). The Court stressed, however, that the lack of coverage "exceptional exemption" does not apply where the insurer claims that the hospital treatments were medically excessive, since the defense of medical excessiveness seeks to excuse only part, but not all, of the no-fault benefits (90 NY2d at 199, 202). Thus, where an insurer alleges excessive treatment as a basis for denying coverage, a denial of claim must be served within the time-sensitive deadline of the No-Fault Law, at least as to the portion of the demand that is deemed excessive.

Two years later in *Mount Sinai Hosp. v Triboro Coach* (263 AD2d 11 [1999]), this Court applied the *Central General Hospital* rationale and, in so doing, explained that the insurer who asserts entitlement to the "exceptional exemption" must "come forward with proof in admissible form to establish 'the fact' or the evidentiary 'found[ation for its] belief' that the patient's treated condition was unrelated to his or her automobile accident" (*id.* at 19-20). This Court determined that in applying *Central General Hospital*, "the question of whether an injury was entirely preexisting (i.e., not covered) or was in whole or in part the result of an insured accident (i.e., covered) is hybrid in nature, and cannot be resolved *without recourse to the medical facts*" (*id.* at 19 [emphasis added]).

This Court further emphasized that the underlying purpose of the No-Fault Law would be undermined if a plaintiff hospital were required to prove as a threshold matter that a patient's

condition was caused by the accident and unrelated to his or her entire medical history. Under such circumstances, "insurers would be motivated to refrain from issuing timely disclaimers in order to impose such an onerous threshold burden upon claimants" (*id.* at 20). The burden of proving the lack of a nexus between an accident and medical treatment therefore falls upon the insurer seeking to deny payment (*id.* at 19-20).

Against this backdrop, the judicially noticed admissibility of the proffered diagnosis and procedure codes key published by HHS, and whether the deciphered codes, if admitted, establish that medical diagnosis and treatment was or was not related in whole or in part to Hafford's automobile accident, assumes dispositive significance to the resolution of this appeal.

## III. <u>Judicial Notice</u>

CPLR 4511 (b) provides that upon request of a party, a court may take judicial notice of federal, state, and foreign government acts, resolutions, ordinances, and regulations, including those of their officers, agencies, and governmental subdivisions. While the concept of judicial notice is elastic (*see* Richardson, Evidence § 52 [Prince 10th ed]) and applicable to a wide range of subject matter, official promulgations of government appear to be particularly appropriate for judicial notice, given the manner that CPLR 4511 expressly singles them out for such treatment.

Judicial notice has never been strictly limited to the constitutions, resolutions, ordinances, and regulations of government, but has been applied by case law to other public documents that are generated in a manner which assures their reliability. Thus, the concept has been applied to census data (*see Affronti v Crosson*, 95 NY2d 713, 720 [2001]; *Buffalo Retired Teachers 91-94 Alliance v Board of Educ. for City School Dist. of City of Buffalo*, 261 AD2d 824, 827 [1999]; *Mackston v State of New York*, 126 AD2d 710 [1987]), agency policies (*see Matter of Albano v Kirby*, 36 NY2d 526, 532 [1975]), certificates of corporate dissolution maintained by the Secretary of State (*see Brandes Meat Corp. v Cromer*, 146 AD2d 666, 667 [1989]), the resignation of public officials (*see Matter of Soronen v Comptroller of State of N.Y.*, 248 AD2d 789, 791 [1998]; *Matter of Maidman*, 42 AD2d 44, 47 [1973]), legislative proceedings (*see Outlet Embroidery Co. v Derwent Mills*, 254 NY 179, 183 [1930]), legislative journals (*see Browne v City of New York*, 213 App Div 206, 233 [1925]), the consumer price index (*see Sommers v Sommers*, 203

AD2d 975, 976 [1994]; *City of Hope v Fisk Bldg. Assoc.*, 63 AD2d 946, 947 [1978]), the location of real property recorded with a clerk (*see Andy Assoc. v Bankers Trust Co.*, 49 NY2d 13, 23-24 [1979]), death certificates maintained by the Department of Health (*see Matter of Reinhardt*, 202 Misc 424, 426 [1952]), and undisputed court records and files (*see e.g. Perez v New York City Hous. Auth.*, 47 AD3d 505 [2008]; *Walker v City of New York*, 46 AD3d 278, 282 [2007]; *Matter of Khatibi v Weill*, 8 AD3d 485 [2004]; *Matter of Allen v Strough*, 301 AD2d 11, 18 [2002]). Even material derived from official government Web sites may be the subject of judicial notice (*see Munaron v Munaron*, 21 Misc 3d 295 [Sup Ct, Westchester County 2008]; *Parrino v Russo*, 19 Misc 3d 1127[A], 2008 NY Slip Op 50925[U] [Civ Ct, Kings County 2008]; *Nairne v Perkins*, 14 Misc 3d 1237[A], 2007 NY Slip Op 50336[U] [Civ Ct, Kings County 2007]; *Proscan Radiology of Buffalo v Progressive Cas. Ins. Co.*, 12 Misc 3d 1176[A], 2006 NY Slip Op 51242[U] [Buffalo City Ct 2006]).

White Plains Hospital argues that the codes key available on the HHS Web site does not qualify for judicial notice by relying upon the language of this Court in *Ptasznik v Schultz* (247 AD2d 197 [1998]). In *Ptasznik*, then-Justice Albert Rosenblatt defined the test for judicial notice as "whether the fact rests upon knowledge or sources so widely accepted and unimpeachable that it need not be evidentiarily proven" (*id.* at 198, citing *Hunter v New York, Ontario & W. R.R. Co.*, 116 NY 615 [1889]). White Plains Hospital maintains that code numbers which require deciphering do not constitute general information widely accepted by the average layperson. However, *Ptasznik* discusses specifically, and the universe of case law recognizes generally, two disjunctive circumstances where information may be judicially noticed. The first is when information "rests upon *knowledge* . . . [that is] widely accepted" (*Ptasznik v Schultz*, 247 AD2d at 198 [emphasis added]) such as calendar dates, geographical locations, and sunrise times (*id.* at 199). The second "rests upon . . . *sources* [that are] widely accepted and unimpeachable" (*id.* at 198 [emphasis added]), such as reliable uncontested governmental records.

Here, the diagnosis and procedure codes key maintained by the United States Government on its HHS Web site is of sufficient authenticity and reliability that it may be given judicial notice. The accuracy of the codes key is not contested by White Plains Hospital, and is not subject to courtroom fact-finding (*see*

*Affronti v Crosson*, 95 NY2d at 720). The fact that the code system might not be readily understood by the lay public is of no significance, as the information is proffered for judicial notice not on the basis of being generally understood by the public, but rather, on the basis of its reliable source.

We hold, therefore, that the diagnosis and procedure codes key published by the United States Government on its HHS Web site may properly be given judicial notice (*see* CPLR 4511 [b]), as the key is reliably sourced and its accuracy not contested.

Using the codes key in evidence, the appellant, Allstate, accurately deciphered for the Supreme Court the medical diagnoses and treatments administered by White Plains Hospital to Hafford during the course of Hafford's hospital stay.

## IV. The Medical Evidentiary Value of the Deciphered Codes

The plaintiffs established their prima facie entitlement to summary judgment on the third cause of action asserted by White Plains Hospital to recover no-fault benefits on behalf of its assignor, Hafford (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), by submitting the prescribed statutory billing forms, the affidavit of its biller, the certified mail receipt, and the signed return receipt card referencing the patient and the forms (*see Westchester Med. Ctr. v Allstate Ins. Co.*, 53 AD3d 481 [2008]; *Westchester Med. Ctr. v Countrywide Ins. Co.*, 45 AD3d 676 [2007]; *Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co.*, 44 AD3d at 904; *New York & Presbyt. Hosp. v Travelers Prop. Cas. Ins. Co.*, 37 AD3d 683, 683-684 [2007]). Unlike negligence actions where plaintiffs must prove causation, plaintiffs seeking to recover first party no-fault payments bear no such initial burden, as causation is presumed (*see Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 20; *Bronx Radiology, P.C. v New York Cent. Mut. Fire Ins. Co.*, 17 Misc 3d 97, 99 [2007]).

In opposition, Allstate relies upon the judicially-noticed diagnosis and procedure codes key published by HHS to argue, via an attorney's affirmation, that care and treatment rendered to Hafford by White Plains Hospital was causally unrelated to Hafford's automobile accident.

■ Allstate has failed to come forward with proof in admissible form, as is its burden in opposing summary judgment (*see Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]; *Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 19-

20), to raise a triable issue as to " 'the fact or founded belief that the alleged injury does not arise out of an insured incident' " (*Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 19, quoting *Central Gen. Hosp. v Chubb Group of Ins. Cos.*, 90 NY2d 195, 199 [1997] [emphasis omitted]; see *New York & Presbyt. Hosp. v Selective Ins. Co. of Am.*, 43 AD3d 1019, 1020 [2007]). While the existence of the diagnostic codes and the clinical definitions of Hafford's treated medical conditions may not be in dispute, the question of whether such conditions were wholly unrelated to his automobile accident or not exacerbated by the accident "cannot be resolved without recourse to the medical facts" (*Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 19). Here, Allstate's counsel, in his affirmation, failed to set forth any basis on which to conclude that he was a medical expert qualified to render an opinion on causality (see *Contacare, Inc. v CIBA-Geigy Corp.*, 49 AD3d 1215 [2008]; *Hofmann v Toys "R" Us, NY Ltd. Partnership*, 272 AD2d 296 [2000]). No physician or other medical expert affidavit was included in Allstate's submissions to explain the codes, the diagnoses and, most importantly, the causation or exacerbation, or lack of causation or exacerbation of conditions, in relation to the subject automobile accident. The mere deciphered codes, in and of themselves, are insufficient.

We acknowledge that there are rare but recognized instances where medical issues can be resolved by a trier of fact without resort to expert opinion. A classic example is if a surgeon leaves a foreign object inside a patient's body, the absence of the surgeon's proper exercise of care and skill speaks for itself without the need for an expert (see *Kambat v St. Francis Hosp.*, 89 NY2d 489, 496 [1997]). Here, Allstate argues that no medical expert affidavit is required (see *St. Luke's Roosevelt Hosp. v Allstate Ins. Co.*, 303 AD2d 743, 744 [2003]) as "the codes speak for themselves and merely require the application of simple logic." We do not agree. The deciphered codes identify Hafford's diagnoses and treatments but do not address causality. Certain of the deciphered codes such as infection, acute respiratory failure, convulsions, and expectoration of blood are not necessarily conditions unrelated to an automobile accident. An expert's affidavit is required for a court to conclude the absence of proximate causality as to these conditions (see *Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 19) or to at least find a nonspeculative question of fact as to causality (see *State Farm Mut. Auto. Ins. Co. v Stack*, 55 AD3d 594 [2008]; *New York & Presbyt. Hosp. v Selective Ins. Co. of Am.*, 43 AD3d at 1020).

The remaining coded conditions, which on their face might appear unrelated to an automobile accident, could conceivably represent exacerbations of preexisting conditions in the absence of expert medical opinion attesting otherwise. Exacerbations of preexisting conditions are covered by the No-Fault Law (*see Wolf v Holyoke Mut. Ins. Co.*, 3 AD3d 660, 660-661 [2004]; *Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 18).

Allstate's submissions therefore suffer from an inescapable paradox. If the diagnostic codes pertain to conditions unrelated to Hafford's accident, Allstate was required to submit an affidavit from a medical expert (*see Mount Sinai Hosp. v Triboro Coach*, 263 AD2d at 19). If, on the other hand, the diagnostic codes represent conditions related to the accident, then Allstate was required to either pay the no-fault claim, or deny payment on other grounds, within 30 days of receiving the demand (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; *Fair Price Med. Supply Corp. v Travelers Indem. Co.*, 10 NY3d at 563; *Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co.*, 44 AD3d at 903; *New York & Presbyt. Hosp. v Progressive Cas. Ins. Co.*, 5 AD3d at 569). Either way, Allstate failed to raise a triable issue of fact in admissible evidentiary form sufficient to warrant denial of summary judgment in favor of White Plains Hospital on the third cause of action.

Based upon the foregoing, we conclude that the Supreme Court properly granted that branch of the plaintiffs' motion which was for summary judgment on the third cause of action asserted by White Plains Hospital.

To the extent that Allstate argues that the branch of its cross motion which was for summary judgment dismissing the third cause of action should have been granted, this contention is not properly before this Court as Allstate's notice of appeal limited the scope of the appeal to that part of the Supreme Court's order which awarded summary judgment to White Plains Hospital on the third cause of action (*see* CPLR 5515 [1]; *Spencer v Crothall Healthcare, Inc.*, 38 AD3d 527, 528 [2007]; *Yannotti v Four Bros. Homes at Heartland Condominium I*, 24 AD3d 659, 660-661 [2005]).

Accordingly, we affirm the order insofar as appealed from.

FISHER, J.P., MILLER and ENG, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.