■ In the Matter of JUSTIN EE., Alleged to be a Permanently Neglected Child. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHEILA EE., Appellant, et al., Respondent. (And Another Related Proceeding.)—Yesawich, Jr., J. Appeal from an order of the Family Court of Otsego County (Mogavero, Jr., J.), entered June 28, 1988, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate Justin and Shannon EE. permanently neglected children, and terminated respondents' parental rights.

Respondents were married in April 1982, having already produced two children, a daughter born that month and a son born in March 1981. At the time of their marriage, felony charges were pending against both parents; the father was subsequently sentenced to incarceration and the mother was placed on probation, the terms of which required her to reside with the children at her parents' home, to make restitution, to stay off public assistance and to undergo mental health counseling or treatment as necessary; she was also prohibited from

residing with the father upon his release from prison. Later that year, respondents were divorced and, in November 1985, the mother remarried. In the interim, the children were apparently primarily cared for by the maternal grandmother and aunt; following her remarriage, the mother's contact with the children was only on weekends.

In January 1986, a child abuse report alleged that the children "imitate people smoking marihuana with pipes and people having sex", prompting a neglect petition charging the mother and her new husband with performing sexual acts and consuming marihuana in front of the children. In July 1986, following a hearing, Family Court placed the children in the custody of petitioner for 18 months, with instructions to formulate a plan for reuniting the family. In the meantime, the father was released from prison, and he and the mother began living together in defiance of the terms of her probation and his parole, and despite the further fact that she had since remarried. Cognizant of this situation, petitioner set the following objectives to be met by respondents to attain the goal of reuniting the family: acquiring a place for the children to live, enough financial stability so that they could provide for the children, protection of the children from harm, attendance at classes in parenting skills, the mother's divorce from her current husband, and applications to remove their respective parole and probation conditions prohibiting respondents' cohabitation. The only objective achieved was the mother's divorce and respondents subsequent remarriage in February 1987.

Visitation was somewhat successful for a time and was being increased toward the goal of overnight visits. However, it was unclear where respondents were living much of the time due to their moving around; in fact, at one point the mother reported that she was sleeping in their car. Four weekend-long visits were accomplished, but in July 1987 the mother reported being beaten by the father and she was placed in a battered women's shelter. Nevertheless, she returned to the father approximately five days later. As a result of the physical abuse incident, visitation was curtailed and limited to supervised visits. These restrictions evidently did not suit respondents and no further visits occurred.

Notwithstanding repeated efforts by petitioner's caseworkers to get her to do so, the mother did not attend parental skills classes. Mental health counseling ended after three sessions because the father stopped attending and the clinical social worker insisted on joint attendance by the couple. The mother

was unable to maintain employment, due in part to her pregnancy with respondents' third child, born in April 1987. Finally, on September 9, 1987, the mother was arrested and charged with second degree burglary and fourth degree grand larceny; after pleading guilty to lesser charges, she was sentenced to 2 to 4 years of incarceration.

Thereafter, petitioner instituted the instant proceeding to adjudge the two older children permanently neglected, which Family Court did following a fact-finding hearing; after a dispositional hearing, respondents' parental rights were formally terminated and the two children were made available for adoption. Only the mother appeals; we affirm.

The mother's first contention is that the Family Court Judge of Otsego County, who also sits in that county as County Judge, committed reversible error by taking judicial notice of respondents' criminal histories. A court may take judicial notice of prior judicial proceedings though in a different court and involving different parties (see, Fisch, NY Evidence § 1065, at 602-603 [2d ed]). However, the manner in which it was done here, *sua sponte,* after the conclusion of the fact-finding hearing, was inappropriate in that respondents had no opportunity to challenge either the accuracy or relevance of the judicially noticed facts (see generally, Fisch, NY Evidence § 1070, at 608 [2d ed]; *Matter of Leon RR,* 48 NY2d 117, 122-124). Nevertheless, the error was harmless, for the mother's criminal record and other relevant proceedings were contained in the caseworkers' progress notes and related documents which were received in evidence at the hearing without objection from her. And while Family Court did take notice of parts of the father's criminal record that were not in evidence, the bulk of that record is temporally so far removed from the father's association with the mother that it is unlikely she was prejudiced by its use.

As to the merits of Family Court's determination, it is clear that petitioner, through the services of several caseworkers, made diligent efforts to help the mother become an acceptable parent (see, Social Services Law § 384-b [7] [a]; Family Ct Act § 614 [1] [c]). A plan was established for addressing her needs, information and counseling on housing and employment were offered, she was encouraged to participate in parenting skill training and mental health counseling, and visitation was facilitated in spite of her marginal progress toward complying with the plan objectives (see, Social Services Law § 384-b [7] [f]). That she chose to associate with men who were negative influences on her and her children cannot be attributed to

petitioner. Given that the mother returned to the father even after being beaten by him and taken by her caseworker to a shelter, it is unlikely that petitioner could have done anything to make her behave differently. Moreover, petitioner had an obligation to attempt to remedy the father's deficiencies as a parent as well as the mother's deficiencies.

The record is equally clear as to the mother's failure to plan for her children's future (see, Social Services Law § 384-b [7] [a]; Family Ct Act § 614 [1] [d]). Although the mother apparently has affection for her children, she was unwilling to assume the responsibilities inherent in parenting (see, Matter of Jamie M., 63 NY2d 388, 393). In drafting a plan for her that was well within her capabilities, petitioner was in effect offering her the opportunity to show some initiative toward providing an acceptable family environment for her children. The record discloses that she spurned that offer.

To support her contention that neglect was not continuous for a period of more than a year (see, Social Services Law § 384-b [7] [a]; Family Ct Act § 614 [1] [d]), the mother points to the fact that as late as March 1987 visitation time with the children was being extended. This argument assumes that there was some connection between increased visitation and the mother's planning for the future of her children; there was not. Even when weekend visits were authorized, only four visits were accomplished in nearly six months' time. There is simply no evidence in the record that the mother, at any time after the children were removed from her, took any significant steps toward planning for their future or correcting the conditions that necessitated their removal.

Order affirmed, without costs. Mahoney, P. J., Casey, Yesawich, Jr., Levine and Mercure, JJ., concur.