*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 11, 2015                    517091
_____

In the Matter of JULIAN P.
    and Others, Alleged to be
    Abused and Neglected
    Children.

COLUMBIA COUNTY DEPARTMENT OF              MEMORANDUM AND ORDER
    SOCIAL SERVICES,
                    Respondent;

COLLEEN Q.,
                    Appellant,
                    et al.,
                    Respondent.

_____

Calendar Date:  May 1, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Ira Halfond, Craryville, for appellant.

        Willow Baer, Columbia County Department of Social Services,
Hudson (N. Daniel Reeder of William J. Better, PC, Kinderhook of
counsel), for Columbia County Department of Social Services,
respondent.

        Alexander Bloomstein, Hillsdale, attorney for the children.

_____

Egan Jr., J.

        Appeal from an order of the Family Court of Columbia County
(Nichols, J.), entered June 5, 2013, which granted petitioner's
application, in a proceeding pursuant to Family Ct Act article
10, to adjudicate the subject children to be abused and

neglected, and changed the permanency goal for the children to placement for adoption.

Respondent Melissa P. (hereinafter the mother) is the mother of three children – Julian P., Sierra P. and Lily P. (born in 2004, 2006 and 2009, respectively) – and respondent Colleen Q. (hereinafter the grandmother) is the children's maternal grandmother. In June 2010, Family Court adjudicated the children to have been neglected by the mother and placed them in the grandmother's temporary custody, with supervised visitation, and later approved a permanency goal of reunification with the mother (Matter of Julian P. [Melissa P.-Zachary L.], 106 AD3d 1383 [2013]). Shortly thereafter, in November 2010, Lily, then one year old, was taken to the hospital with a swollen right leg, where X rays disclosed a fractured right femur (thigh bone) that had been caused by "tremendous force" within the prior four to seven days. Further X rays revealed multiple additional fractures that were in varying stages of healing, including fractures to the left tibia (shin bone), the left ulna and radius (wrist) and five ribs on both sides of her rib cage, all of which occurred during the period of time that Lily was in her grandmother's custody.

Petitioner then commenced this abuse and neglect proceeding against the mother and grandmother; the children were removed from the grandmother's custody and orders of protection were issued. At the ensuing fact-finding hearing, the medical testimony established the approximate age of Lily's fractures and that they had been caused by multiple instances of nonaccidental and "significant" trauma. The medical experts also testified that the physical manifestations of Lily's injuries – pain, crying, swelling and impeded mobility – would have been apparent to any caregiver, and that none of those injuries had received medical treatment prior to the femur fracture. During the relevant time period, the children resided with and were cared for by the grandmother, the mother and the mother's boyfriend. Expert testimony ruled out osteogenesis imperfecta, or brittle bone disease, as the cause of Lily's fractures, and the older children reported many acts of physical and mental abuse and neglect by the mother and grandmother, including being put in day-long timeouts without food or bathroom breaks and being

forced outside – in winter, at night and without coats – and told
that coyotes would eat them.  It also was established that the
mother's boyfriend had entered a guilty plea to criminal charges,
wherein he admitted causing certain of the documented fractures –
namely, to Lily's femur and some of her ribs.

At the conclusion of the hearing, Family Court determined
that the mother and grandmother had abused Lily, derivatively
abused Julian and Sierra and neglected all three children.
Following a dispositional hearing, Family Court concluded that
the grandmother was not a resource for the children and that
their best interests would be served by changing their permanency
plan to allow for their placement for adoption.  The
grandmother's request for visitation was denied,[1] and the
grandmother now appeals.

We affirm.  The grandmother's primary contention is that
she was denied the effective assistance of counsel due to
counsel's failure to retain an expert to review the medical
evidence and refute the testimony of petitioner's experts.  While
the grandmother, as a respondent in a Family Ct Act article 10
proceeding, was entitled to the effective assistance of counsel
(see Family Ct Act § 262 [a] [i]; Matter of Thompson v Gibeault,
305 AD2d 873, 875 [2003]), she has not demonstrated the absence
of a legitimate or strategic reason for counsel's decisions (see
Matter of Destiny C. [Goliath C.], 127 AD3d 1510, 1513-1514
[2015]; Matter of Ramsey H. [Benjamin K.], 99 AD3d 1040, 1043-
1044 [2012], lv denied 20 NY3d 858 [2013]).  The standard for
evaluating an ineffective assistance of counsel claim is
"whether, viewed in its totality, the representation was
meaningful and whether actual prejudice was suffered as a result
of claimed deficiencies" (Matter of Martin v Martin, 46 AD3d
1243, 1246 [2007]; see Matter of Daniel BB., 26 AD3d 687, 689
[2006]; Matter of James P., 17 AD3d 733, 734 [2005]).

---

[1]  Family Court also noted that petitions to terminate
parental rights had been filed against both parents.  The record
reflects that the father has not been involved in the children's
lives, has only minimally participated in the hearings and was
deemed not to be a resource for the children.

Here, counsel for the grandmother and the mother presented the united defense that they had neither caused nor were aware of any mistreatment of or injuries to Lily or the older children, placing all of the blame on the mother's boyfriend. While the mother's counsel took the lead in cross-examining petitioner's witnesses and calling witnesses in furtherance of the united defense – including the pediatrician and pediatric nurse who previously had cared for the children and had not observed signs of abuse or neglect – the grandmother's counsel undertook relevant follow-up cross-examination of those witnesses and, further, called the pediatrician and the mother's boyfriend as witnesses on her behalf. In addition to presenting a cogent and cohesive defense establishing that the grandmother worked full-time outside of the home during the period when the abuse occurred and postulating that the mother's boyfriend was responsible for the injuries sustained, the grandmother's counsel otherwise made appropriate objections, elicited favorable testimony and successfully opposed a request to draw a negative inference against her.

With regard to the grandmother's specific complaint that counsel did not call favorable medical experts to rebut petitioner's experts, the case law makes clear that "[t]he failure to call particular witnesses . . . does not necessarily constitute ineffective assistance" of counsel (Matter of James P., 17 AD3d at 734-735; accord Matter of Thompson v Gibeault, 305 AD2d at 875). To that end, the grandmother has not demonstrated that there were "relevant experts who would have been willing to testify in a manner helpful [and favorable] to [her] case[]" (Matter of Destiny C. [Goliath C.], 127 AD3d at 1513), and her speculation that counsel could have found an expert with a contrary, exculpatory medical opinion is insufficient to establish deficient representation or prejudice (see Matter of Troy SS. v Judy UU., 69 AD3d 1128, 1133-1134 [2010], lv dismissed and denied 14 NY3d 912 [2010]; Matter of Brenden O., 20 AD3d 722, 723 [2005]; Matter of James P., 17 AD3d at 735; Matter of Bates v Bates, 290 AD2d 732, 734 [2002]). As our review of the record reveals that the grandmother's attorney "advocated her . . . position with sufficient skill to clearly constitute meaningful representation" (Matter of Brenden O., 20 AD3d at 723), we find that she received the effective assistance of counsel.

We likewise are unpersuaded by the grandmother's argument that Family Court erred in taking judicial notice of the boyfriend's criminal plea allocution, which the trial judge had accepted in his dual capacity as a County Judge, wherein the mother's boyfriend admitted causing Lily's femur and some of her rib fractures in November 2010. Under established law, "[a] court may take judicial notice of prior judicial proceedings though in a different court and involving different parties" (Matter of Justin EE., 153 AD2d 772, 774 [1989], lv denied 75 NY2d 704 [1990]). Here, Family Court made clear at the outset of the fact-finding hearing that it intended to take judicial notice of all "prior orders and findings," to which no objection was raised. It is significant that the mother's boyfriend testified at the fact-finding hearing regarding his guilty plea; the grandmother's counsel had a full opportunity to cross-examine him and, in fact, called him as a witness in pursuit of the theory that he had inflicted Lily's injuries.[2] Thus, it cannot be said that the grandmother did not have notice of and an opportunity to elicit and challenge the facts related to the plea allocution of which Family Court took judicial notice (compare Matter of Dakota CC. [Arthur CC.], 78 AD3d 1430, 1431 [2010]).

Moreover, Family Court's primary purpose in taking judicial notice of the plea allocution was to assess the boyfriend's credibility as a witness at the fact-finding hearing, ultimately concluding that the boyfriend's plea admissions were consistent with the medical testimony adduced at the underlying hearing and that he had no motive to testify falsely. It bears emphasis that the plea allocution established the boyfriend's admitted misconduct, which the grandmother used to support her theory that he alone was responsible for all of the injuries sustained. The boyfriend's plea did not constitute evidence that the grandmother

---

[2] While a transcript of the plea allocution was not introduced into evidence at the fact-finding hearing and the specific crimes to which the boyfriend pleaded guilty were not elicited, the grandmother did not assert that her counsel was unable to obtain a copy of that transcript and Family Court concluded that "it was readily available to all of the attorneys."

had inflicted any of the injuries but, rather, at most established that, as the sole custodian, she was aware of or should have been aware of the boyfriend's mistreatment of Lily and allowed such mistreatment to occur (compare Matter of Justin EE., 153 AD3d at 774).  Under these circumstances, we do not find that taking judicial notice was inappropriate and further conclude that any error in this regard was harmless in view of the substantial compelling proof of abuse and neglect (cf. Matter of Billets v Bush, 63 AD3d 1203, 1204 [2009]; Matter of Martin v Martin, 61 AD3d 1297, 1298 n [2009]).  The grandmother's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Clark, JJ., concur.


ORDERED that the order is affirmed, without costs.




ENTER:


Robert D. Mayberger
Clerk of the Court