Matter of Nicole R. v Richard S. (2020 NY Slip Op 03439)





Matter of Nicole R. v Richard S.


2020 NY Slip Op 03439


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

528514

[*1]In the Matter of Nicole R., Appellant,
v
Richard S., Respondent.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Lindsay H. Kaplan, Kingston, for appellant.
Tracy Steeves, Kingston, for respondent.
Claudia S. Davenport, Kingston, attorney for the children.



Garry, P.J.
Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered January 7, 2019, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2010 and 2012). Under a 2014 order, the mother had sole legal and physical custody of both children, while the father had parenting time twice a week, and additional time as agreed upon by the parents. In August 2017, the mother commenced this proceeding seeking to terminate the father's parenting time, claiming that the older child (hereinafter the child) disclosed that the father had molested him and exposed him to pornography. Family Court ordered an investigation pursuant to Family Ct Act § 1034. After completing the investigation, the Ulster County Department of Social Services (hereinafter DSS) declined to file a Family Ct Act article 10 petition against the father. Following fact-finding and Lincoln hearings, Family Court found that there was insufficient corroborating evidence to support a conclusion that the father had touched the child inappropriately or exposed the children to pornography. The court ordered the father parenting time, scheduled to gradually increase over a four-month period, and culminating with the father having alternate weekend parenting time. The mother appeals.
"A party seeking to modify a prior order of visitation must first demonstrate a change in circumstances since the entry of such order so as to trigger an analysis as to whether modification would serve the best interests of the child" (Matter of Janeen MM. v Jean-Philippe NN., ___ AD3d ___, ___, 2020 NY Slip Op 02830, *1 [2020] [citations omitted]; see Matter of Simmes v Hotaling, 166 AD3d 1329, 1330 [2018], lv dismissed and denied 33 NY3d 1043 [2019]). Sufficient evidence establishing the truth of allegations that a parent had inappropriately touched a child "would clearly establish a change in circumstances such that it would be contrary to [a] child's best interest to continue to have unrestricted contact with [that parent] (Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 729 [2011]; see Matter of Joseph YY. v Terri YY., 75 AD3d 863, 866 [2010]). "A child's out-of-court statements are admissible in a Family Ct Act article 6 proceeding when they pertain to abuse or neglect and are sufficiently corroborated" (Matter of Hamilton v Anderson, 143 AD3d 1086, 1087 [2016] [citations omitted]; see Matter of Cory O. v Katie P., 162 AD3d 1136, 1136-1137 [2018]). "A relatively low degree of corroborative evidence is sufficient in abuse proceedings and we accord Family Court considerable discretion in determining whether the out-of-court statements have been reliably corroborated. We also defer to Family Court's credibility determinations" (Matter of Destiny UU. [Leon UU.], 72 AD3d 1407, 1408 [2010] [internal quotation marks, brackets and citations omitted], lv denied 15 NY3d 702 [2010]; see Matter of Hamilton v Anderson, 143 AD3d at 1087-1088; see also Family Ct Act § 1046 [a] [vi]).
The mother contends that the child's sexual abuse allegations were sufficiently corroborated and constituted a change in circumstances. The Family Ct Act § 1034 investigative report prepared by DSS reveals that, in August 2017, the mother was informed by a day-care provider that the child had grabbed the buttocks of the younger child. When the mother confronted him about this behavior, the child disclosed that the father had done "the same to him," and alleged that his father had touched his penis "inside his pants," "kissed his buttocks" and had shown him pornography.[FN1] In an interview conducted by State Police investigators, the child indicated that the touching went on "for a period of about four months to two years," that all of the touching had occurred outside of his clothes, and that he had viewed pornography on his father's tablet.[FN2] The father admitted that he had pornography on his cell phone, but the police found no pornography on the father's tablet. The DSS caseworker subsequently performed a forensic interview of the child, with the mother present, and he stated that the father touched him "inappropriately," that the touching was on the outside of his clothes and that it had occurred multiple times during that visit. Ultimately, DSS declined to file a petition, finding that, "although [the child] disclosed that [the] father . . . touched him inappropriately, there was not enough corroborating evidence to support the child's statement."
The DSS caseworker indicated that the child underwent brain surgery at a young age. The mother testified that the child had difficulty processing information and managing his emotions, and that, prior to the disclosures of inappropriate touching, she noted a change in his attitude, as he became withdrawn, defiant, and refused to go on visits with the father. A mental health specialist testified that she was working with the child to help him learn how to regulate his emotions and behaviors. The mother was also present during most of these sessions, as the child had difficulty separating from her. As part of the "trauma systems" therapy, the child underwent a psychiatric evaluation, and was diagnosed with separation anxiety disorder, attention deficit hyperactivity disorder, combined type, and a provisional, rule-out diagnosis for posttraumatic stress disorder. The mental health specialist stated that the child disclosed the abuse on three different occasions, but she did not engage in conversation on the matter.
Over the course of this proceeding, the father was granted supervised parenting time with the children. The mother testified that, upon being informed of the visit with the father, the child had a "meltdown," becoming "visibly upset," and hitting and pinching himself. Reports from the supervising agency stated that the father was engaged and patient with the child, who displayed anger toward him. During the supervised visits, the child made statements indicating that the mother had told him he was not allowed to visit the father's house, and that he did not have to give his father a Father's Day gift, but could instead give it to the mother's boyfriend. Over the course of several visits, the child appeared to become more relaxed with the father and occasionally hugged him.
"A child's mere repetition of an accusation to others, however consistent and believable, is not sufficient to corroborate his or her prior out-of-court statements" (Matter of Lee-Ann W. [James U.], 151 AD3d 1288, 1292 [2017] [internal quotation marks, brackets and citation omitted], lv denied 31 NY3d 908 [2018]; see Matter of Dezarae T. [Lee V.], 110 AD3d 1396, 1398 [2013]). There are multiple means of corroborating allegations of sexual abuse, including a child's age-inappropriate knowledge of sexual activities, or a child's change in behavior, among other things (see Matter of Cory O. v Katie P., 162 AD3d at 1137; Matter of Lee-Ann W. [James U.], 151 AD3d at 1292; see also Matter of Lawson O. [Andrew O.], 176 AD3d 1320, 1322 [2019], lv denied 35 NY3d 902 [2020]).
Here, however, the record reveals sparse descriptions of the alleged conduct of the father. Moreover, there are significant inconsistencies in the child's allegations of abuse; the child's statements vary between the initial disclosure reported by the mother and his subsequent interviews. Although the DSS caseworker and the mental health therapist each found the child to be credible, they each noted that the child used the word "inappropriately" several times to describe the touching. The only testimony proffered to demonstrate the child's behavioral changes came from the mother. As noted above, "we accord Family Court considerable discretion in determining whether the out-of-court statements have been reliably corroborated" (Matter of Destiny UU. [Leon UU.], 72 AD3d at 1408; see Matter of Caitlyn U., 46 AD3d 1144, 1145-1146 [2007]) and, upon this record, we decline to disturb the court's determination.
In the alternative, the mother argues that the child's "drastic" change in behavior warrants therapeutic or supervised parenting time until the child's emotions are better managed. It is undisputed that the child has emotional and behavioral difficulties, including difficulty managing his emotions, and that these issues existed prior to the allegations presented in this matter. Family Court found the animosity between the mother and the father to be "palpable," and noted that the child made statements during the supervised visits indicating such animosity. The mother had reported a history of abuse by the father. As noted above, during the course of supervised visits, the child slowly became calmer and more relaxed with the father, and the father was able to remain patient, even at times when the child acted out. Notably, the court's order provides for parenting time that will gradually increase over a period of four months. As "[t]he determination of whether parenting time is supervised or unsupervised is committed to the sound discretion of Family Court and will not be disturbed if supported by a sound and substantial basis in the record," we further decline to disturb the court's determination as to the father's parenting time (Matter of Adam E. v Heather F., 151 AD3d 1212, 1215 [2017]; see Matter of Burrell v Burrell, 101 AD3d 1193, 1194 [2012]).
The mother next argues that Family Court improperly relied on the position of the attorney for the children (hereinafter AFC) as set forth in his summation letter to the court. The AFC stated that, in interviews with the child, he did not "express any fear of [the] father" and "indicated a willingness to visit with [the] father." In its decision, the court directly referenced this letter, and used this language within its findings. We find no error in this presentation, either by the AFC in this summation or by the court; the thorough written decision reviewed the evidence presented at the fact-finding hearing, and did not improperly adopt the AFC's stated position (compare Matter of Kathleen K. v Daniel L., 177 AD3d 1130, 1131 [2019]; see CPLR 4213 [b]). Despite the mother's contentions that "all of the probative evidence in the record supported [the child] being terrified of [the] father," the record instead reveals that, although the child at times expressed an unwillingness to visit the father, he also had positive interactions with the father, where he was increasingly engaged and communicative.
Finally, the mother contends that her counsel's failure to call an expert witness on the subject of sexual abuse syndrome constituted the ineffective assistance of counsel. "To maintain a claim of ineffective assistance of counsel, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Thomas KK. v Anne JJ., 176 AD3d 1354, 1356 [2019] [internal quotation marks and citations omitted]; see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010 [2018]). "[T]he failure to call particular witnesses does not necessarily constitute ineffective assistance of counsel — particularly where the record fails to reflect that the desired testimony would have been favorable" (Matter of Bennett v Abbey, 141 AD3d 882, 884 [2016] [internal quotation marks and citations omitted]).
Here, the testimony of both a caseworker and a mental health expert was offered at trial. The mother's counsel may have had strategic reasons for not seeking an expert witness to testify about sexual abuse, as such an expert may not have provided supportive testimony, and the mother's claim to the contrary is merely speculative (see Matter of Jeffrey VV. v Angela VV., 176 AD3d 1413, 1417-1418 [2019]; Matter of Bennett v Abbey, 141 AD3d at 883; Matter of Julian P. [Colleen Q.], 129 AD3d 1222, 1224-1225 [2015]). The record reveals that the mother's counsel provided meaningful representation by calling witnesses, conducting direct and cross-examinations of witnesses and advocating for the mother's position (see Matter of Berenzy v Raby, 145 AD3d 1356, 1358 [2016]; Matter of Knight v Knight, 92 AD3d 1090, 1093 [2012]). Accordingly, we affirm Family Court's order.
Egan Jr., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that order is affirmed, without costs.



Footnotes

Footnote 1: The report also indicates that, prior to the child's disclosure of abuse, he had indicated that pornography had "popped up" on the father's tablet while the child was using it. The mother uncovered this information after the child used sexually explicit language.

Footnote 2: There were no criminal charges brought against the father.