Matter of Jacklyn PP. v Jonathan QQ. (2023 NY Slip Op 06009)

Matter of Jacklyn PP. v Jonathan QQ.

2023 NY Slip Op 06009

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

533906
[*1]In the Matter of Jacklyn PP., Respondent,
v
Jonathan QQ., Appellant. (And Another Related Proceeding.)

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
James P. Youngs, Syracuse, for respondent.
Larisa Obolensky, Delhi, attorney for the child.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Otsego County (John F. Lambert, J.), entered June 17, 2021, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, finding respondent to have committed a family offense, and issued an order of protection.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of one child (born in 2017). The mother and the father were in a relationship for approximately six years and co-parented their child until the July 2020 termination of their relationship. In that same month, the mother filed a family offense petition against the father alleging, among other things, that he harassed, stalked and forcibly touched her. The petition sought an order of protection requiring the father to stay away from her, their child and her daughter, which Family Court temporarily issued. On the same day, the father filed a custody petition pursuant to Family Ct Act article 6.
A joint fact-finding hearing was held on both petitions. At the conclusion of the hearing, Family Court issued a decision finding that the father committed the family offense of stalking, continued the temporary order of protection, and scheduled the matter for a dispositional hearing on the family offense petition. Thereafter, the court issued a permanent order of protection and a final order of custody. In February 2021, prior to the dispositional hearing, the father filed an order to show cause seeking to vacate the terms of the temporary order of protection and to temporarily award him legal and physical custody of the child. As grounds for this, he alleged that on August 16, 2020, the mother appeared at his residence, threw items, pushed his air conditioner through the window and screamed at him in the presence of the child; and that on September 8, 2020 (after he was served with the temporary order of protection) the mother, without informing him, dropped off the child at his home.[FN1] The court ordered a Family Ct Act § 1034 investigation, adjourned the dispositional hearing pending the results of the investigation and vacated the stay-away provisions of the temporary order with respect to the child. The court further issued a temporary order granting the father parenting time with the child from Friday at 3:30 p.m. until Sunday at 7:30 p.m., the parties to exchange the child at the paternal grandmother's house and the parties to communicate by swapping a composition notebook. Upon learning that the Family Ct Act § 1034 report was unfounded, the court scheduled a dispositional hearing for April 2021.[FN2] Thereafter, an order was entered on June 17, 2021 granting, as relevant here, the mother sole legal custody and primary physical custody of the child, with parenting time to the father and issuing a two-year order of protection directing the father to, among other things, stay away from the mother and her daughter. The father appeals.
"In a family offense proceeding [*2]pursuant to Family Ct Act article 8, the petitioner bears the burden of proving, by a fair preponderance of the evidence (see Family Ct Act § 832), that the respondent committed one of the family offenses enumerated in Family Ct Act § 821 (1) (a)" (Matter of Heather E. v Christopher F., 189 AD3d 1937, 1937 [3d Dept 2020] [citations omitted]; see Matter of Awawdeh v Awawdeh, 217 AD3d 1109, 1111 [3d Dept 2023]). "Whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Putnam v Jenney, 168 AD3d 1155, 1156 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Susan WW. v Alan WW., 161 AD3d 1249, 1250 [3d Dept 2018]). Where, as here, the court concludes that the respondent committed the family offense of stalking, but does not articulate the specific subsection or degree, "this Court may independently review the record and determine whether the evidence supports Family Court's finding that the respondent committed one or more family offense" (Matter of Pauline DD. v Dawn DD., 212 AD3d 1039, 1040 [3d Dept 2023] [internal quotation marks and citation omitted], lv denied 39 NY3d 915 [2023]; see Matter of Bedford v Seeley, 176 AD3d 1338, 1340 [3d Dept 2019]).
Upon our review of the record, we find that a fair preponderance of the evidence supports the conclusion that the father committed the family offenses of stalking in the third degree and fourth degree. "A person is guilty of stalking in the third degree when he or she[,] . . . [w]ith intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury" (Penal Law § 120.50 [3]). Additionally, "[a] person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . . is likely to cause reasonable fear of material harm to the physical health, safety or property of such person" (Penal Law § 120.45 [1]).
In support of the offense of stalking in the third degree, the mother testified that the impetus for filing the petition was that in early July 2020 the father walked into her house at about 7:00 a.m., pulled a gun out from his hip holster, pointed it at her and made threats to her and a friend who was also present. On another occasion, the father followed her to a park, reached into her car, grabbed her cell phone and attempted to drive off while dragging her. The mother further testified that in early July 2020, the father walked into her house, called her a "w**re," shoved his hands down her pants, grabbed her "private area" and threw her to the floor resulting in bruising on her leg and marks on her collarbone.
As to stalking in the fourth degree[*3], the mother testified that the father would frequently park and sit outside of her workplace, severely questioned her as to what she was doing, who she was with and to whom she had been talking and would yell at her in an effort to start an altercation. She further testified that on multiple occasions the father drove by her house, parked outside of her house late at night, knocked on her window and photographed her vehicle. Indeed, she averred that the father's habit of continuously letting himself into her house necessitated her changing the locks.[FN3] The mother stated that as a result of his behavior, she was afraid of the father, which several times resulted in her seeking refuge at a hotel, and that on one occasion the father followed her to the hotel and tried to get the receptionist to divulge her room number.
The father categorically denied engaging in any behavior that would constitute a family offense and testified that he went to the mother's home and place of employment for the legitimate purpose of exchanging the child.[FN4] Mindful that the requisite intent to harass, annoy or alarm may be inferred from the conduct itself or the surrounding circumstances (see Matter of Stefanow v Stefanow, 214 AD3d 1215, 1217 [3d Dept 2023]; Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [3d Dept 2015]), and accepting Family Court's credibility determinations, we see no basis to disturb Family Court's finding that the mother satisfied her burden of establishing, by a preponderance of the evidence, the underlying family offenses (see Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 770 [3d Dept 2021]; Matter of Allen v Emery, 187 AD3d 1339, 1342 [3d Dept 2020]).Thus, the court did not err in granting the mother's request for a two-year stay-away order of protection (see Family Ct Act §§ 841 [d]; 842]).
The father next contends that granting the mother sole custody was not in the child's best interests and that Family Court erred in considering the father's family offenses in determining custody. Initially, we are unpersuaded by the father's argument that during the dispositional hearing Family Court impermissibly allowed testimony regarding the August 16, 2020 incident at the father's house without reopening the fact-finding hearing, as "the court has broad discretion to establish the parameters of proof and may consider any relevant matter in evaluating a child's best interests" (Matter of Colona v Colona, 125 AD3d 1123, 1125-1126 [3d Dept 2015]; see Matter of Scott LL. v Rachel MM., 98 AD3d 1197, 1197 [3d Dept 2012]).
Turning to the merits, "[w]hen making an initial custody determination, Family Court's primary focus is the best interests of the child, which requires an analysis of such factors as each parent's relative fitness and past performance, ability to provide for the child's well-being and furnish a stable home environment, and willingness to foster relationships with the other parent" (Matter of Zaida DD. v Noel EE., 177 AD3d 1220, 1220[*4][3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of William Z. v Kimberly Z., 212 AD3d 1036, 1037-1038 [3d Dept 2023]). "Family Court's factual findings and credibility determinations are entitled to great deference and will not be disturbed if they have a sound and substantial basis in the record" (Matter of Brandon QQ. v Shelby QQ., 216 AD3d 1212, 1213 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1187 [3d Dept 2022]).
The mother testified that initially the parties shared custody of the child and were able to communicate and engage in activities together. Upon the deterioration in their relationship, the father became extremely controlling and frequently instigated altercations. As a result, the parties were no longer able to communicate and had to resort to using a composition notebook to discuss matters pertaining to the child. The mother testified that the father failed to utilize the notebook. Additionally, she stated that the father repeatedly contacted the abuse hotline to have her investigated as to the child's care. Despite the foregoing concerns, the mother wants the child to have a relationship with the father.
The father testified that he had the child a majority of the time and spoke of his concern that the mother would abscond from the state with the child. And while he categorically denied engaging in behavior that would constitute a family offense, the father indicated a willingness to undergo a mental health evaluation and follow any recommendations therefrom. Family Court credited the mother's testimony on this issue.
Family Court properly considered the various factors in its best interest analysis, giving greatest emphasis to the father having committed family offenses and finding that presently the parties cannot communicate. Contrary to the father's contention, when determining the child's best interests, Family Court must consider the effect of having committed a family offense when the allegations are proven by a preponderance of the evidence (see Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]; Matter of Paul CC. v Nicole DD., 151 AD3d 1235, 1236 [3d Dept 2017]). Moreover, where the parents are unable to effectively and directly communicate with one another to care for the child, a grant of joint custody may not be feasible or appropriate (see Matter of Nicole J. v Joshua J., 206 AD3d at 1187; Matter of Adam E. v Heather F., 151 AD3d 1212, 1213 [3d Dept 2017]). According deference to Family Court's credibility assessments, the record evidence supports the conclusion that joint legal custody was not feasible and that a sound and substantial basis exists to support the grant of sole legal and primary physical custody to the mother (see Matter of Nicole J. v Joshua J., 206 AD3d at 1187; Matter of Nicole V. v Jordan U., 192 AD3d 1355, 1358 [3d Dept 2021]).[FN5]
With regard to the father's claim that there [*5]was no basis for Family Court to preclude the testimony of his girlfriend and mother at the dispositional hearing, this issue is unpreserved for our review given the absence of a timely objection made during the hearing (see Matter of Warda NN. v Muhammad OO., 217 AD3d at 1090; Matter of Imrie v Lyon, 158 AD3d 1018, 1021 [3d Dept 2018]).
Turning lastly to the father's claim of ineffective assistance of counsel, "[t]o successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010 [3d Dept 2018] [internal quotation marks and citations omitted]). "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, [the father's] constitutional right to the effective assistance of counsel will have been met" (Matter of Ronan L. [Jeana K.], 195 AD3d 1072, 1077 [3d Dept 2021] [internal quotation marks and citations omitted]). The father argues that his counsel failed to call his girlfriend and mother as witnesses, failed to admit the composition notebook and a police report, and failed to file a petition on his behalf. "[T]he failure to call particular witnesses does not necessarily constitute ineffective assistance of counsel" (Matter of Madelyn V. [Lucas W.-Jared V.], 199 AD3d 1249, 1252 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 901 [2022]; see Matter of Bennett v Abbey, 141 AD3d 882, 884 [3d Dept 2016]), and it is speculative to assert that the testimony would have led to a more favorable result for the father (see Matter of John V. v Sarah W., 143 AD3d 1069, 1071 [3d Dept 2016]; Matter of Coleman v Millington, 140 AD3d 1245, 1248 [3d Dept 2016]). Moreover, the father has failed to demonstrate the absence of strategy or legitimate explanation for counsel's failure to admit documentary proof or to file a petition on his behalf (see Matter of Nicole J. v Joshua J., 206 AD3d at 1190; Matter of Bennett v Abbey, 141 AD3d at 883).As the father's counsel called witnesses, adequately cross-examined witnesses, made appropriate objections and engaged in motion practice, the father received meaningful representation and his ineffective assistance of counsel argument is unpersuasive (see Matter of Farideh P. v Ahmed Q., 202 AD3d 1391, 1394 [3d Dept 2022], lv denied 38 NY3d 909 [2022], cert denied ___ US ___, 143 S Ct 606 [2023]; Matter of Nicole R. v Richard S., 184 AD3d 978, 983 [3d Dept 2020]).
Garry, P.J., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The father took a video of the August 16, 2020 incident which was viewed by the parties and Family Court.

Footnote 2: Family Court conducted a Linclon hearing with the child in May 2021.

Footnote 3: The father was her landlord and had a key to her house.

Footnote 4: Family Court credited the testimony of the mother but not that of the father.

Footnote 5: Although not determinative, the attorney for the child advocates to affirm Family Court's determinations.