Matter of Katonah-Lewisboro Union Free Sch. Dist. v New York State Educ. Dept. (2025 NY Slip Op 04211)

Matter of Katonah-Lewisboro Union Free Sch. Dist. v New York State Educ. Dept.

2025 NY Slip Op 04211

Decided on July 17, 2025

Appellate Division, Third Department

Reynolds Fitzgerald, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 17, 2025

CV-24-0696

[*1]In the Matter of Katonah-Lewisboro Union Free School District et al., Respondents,
v
New York State Education Department et al., Appellants, et al., Respondents.

Calendar Date:May 29, 2025

Before: Garry, P.J., Clark, Lynch, Reynolds Fitzgerald and McShan, JJ.

Letitia James, Attorney General, Albany (Joseph M. Spadola of counsel), for appellants.
Thomas, Drohan, Waxman, Petigrow & Mayle, LLP, Hopewell Junction (Steven L. Banks of counsel), for Katonah-Lewisboro Union Free School District and another, respondents.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (David Gandin, J.), entered March 8, 2024 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent State Education Department sustaining a complaint against petitioners.
H.P. is a student with developmental disabilities, including autism. During the 2021-2022 school year, he and his parents resided within the Katonah-Lewisboro Union Free School District.[FN1] Petitioners' Committee on Special Education [FN2] (hereinafter the CSE) developed an individualized educational program [FN3] for H.P. that provided for placement at a private residential school specializing in services for autistic students. Pursuant to the mandates of both the Individuals with Disabilities Education Act (see 20 USC § 1400 et seq. [hereinafter IDEA]) and the state Education Law, petitioners were obligated to pay for H.P's tuition and associated costs at the school. H.P. turned 21 years old during the 2021-2022 school year. In the spring of 2022, H.P.'s parents requested a meeting with the CSE to address their concerns that, due to COVID-19 restrictions, H.P. was not receiving a free and appropriate public education (hereinafter FAPE) and requested compensatory education services.[FN4] At the meeting, the CSE informed the parents that they had determined that H.P. was not entitled to compensatory education. More importantly for purposes of this appeal, the CSE informed the parents that because H.P. had turned the age of 21, he was not eligible to receive educational services from petitioners for the 2022-2023 school year. In other words, H.P. had "aged out." H.P.'s parents sought an additional meeting to discuss this matter further, especially in light of the fact that H.P. had not received a high school diploma. The CSE refused, reiterating its position that H.P. was ineligible for an individualized educational program for the 2022-2023 school year.[FN5]
H.P.'s parents filed a complaint (see 8 NYCRR 200.5 [l] [1]) with respondent State Education Department (hereinafter SED) alleging that petitioners did not provide adequate written notice of their decision to terminate education services for H.P. SED sustained the complaint, finding that petitioners' written notice to H.P.'s parents was insufficient. Additionally, SED determined that, under the IDEA, petitioners were required to provide H.P. with a FAPE until the day before his 22nd birthday. Thus, SED directed petitioners to convene a meeting of the CSE to consider compensatory education for H.P. Thereafter, petitioners commenced this CPLR article 78 proceeding against SED and respondents Commissioner of Education and David Jove, the regional associate of SED (hereinafter collectively referred to as the state respondents), alleging that the determination was arbitrary and capricious, an abuse of discretion and affected by an error of law, arguing that petitioners' obligation to provide a FAPE pursuant to state law terminates [*2]upon a student's 21st birthday (see Education Law § 3202 [1]). Supreme Court agreed, granted the petition and annulled SED's determination, finding that pursuant to state law a school has an obligation to provide a FAPE to a student until his or her 21st birthday or, if that student has educational disabilities, until the last day of the school year during which he or she turns 21 (see Education Law § 4402 [5]). The state respondents appeal.
"The IDEA offers states federal funds to assist in educating children with disabilities. In exchange, a state pledges to comply with a number of statutory conditions, including an obligation to provide a FAPE to all eligible children" (Matter of Elmira City Sch. Dist. v New York State Educ. Dept., 204 AD3d 1134, 1138 [3d Dept 2022] [internal quotation marks, brackets, ellipses and citations omitted]). A FAPE shall be "available to all children with disabilities . . . between the ages of 3 and 21, inclusive" (20 USC § 1412 [a] [1] [A]). However, this mandate does not apply to children with disabilities "aged 3 through 5 and 18 through 21 in a [s]tate to the extent that its application to those children would be inconsistent with [s]tate law or practice, or the order of any court, respecting the provision of public education to children in those age ranges" (20 USC § 1412 [1] [B] [i]). Education Law § 4402 (5) provides that
"a child with a disability who reaches the age of [21] during (a) the period commencing with the [1st] day of July and ending on the [31st] day of August shall if otherwise eligible, be entitled to continue in a July and August program until the [31st] day of August or until the termination of the summer program, whichever shall first occur; or (b) the period commencing on the [1st] day of September and ending on the [30th] day of June shall be entitled to continue in such program until the [30th] day of June or until the termination of the school year, whichever shall first occur."
By way of background in this matter, in 2021 the US Court of Appeals for the Second Circuit affirmed a District Court ruling that the state of Connecticut must provide a FAPE to students for their entire 21st year, despite the existence of former Connecticut General Statutes § 10-76d (b), which provided that Connecticut's obligation to provide such an education terminated when the student "is graduated from high school or reaches age [21], whichever occurs first" (see A.R. v Connecticut State Bd. of Educ., 5 F4th 155, 158 [2d Cir 2021]). In its affirmance, the Second Circuit determined that various adult education programs provided by Connecticut constituted a free "public education" within the meaning of IDEA, thus triggering an obligation to provide a comparable FAPE to disabled students between the ages of 21 and 22 who had not yet received a high school diploma (see L.T. v New York City Dept. of Educ., 2025 WL 896842, *3, 2025 US Dist LEXIS 54240 [SD NY 2025]). In 2023, SED issued a formal opinion of counsel [*3]regarding the applicability of A.R. in New York. The opinion states that this
"decision requires that public schools in New York provide special education and related services to resident students with disabilities until age 22, or the day before the student's 22nd birthday. . . . New York State law defining eligibility for special education is materially indistinguishable from the Connecticut law challenged in A.R. Education Law § 4402 (5) provides that eligibility for special education services lasts only until the conclusion of the school year in which a student turns 21. Additionally, New York, like Connecticut, offers publicly funded adult education programs to non-disabled students in this age group. As such, the holding of A.R. that the interaction between federal law (IDEA) and [s]tate law (services for adults) required public schools in Connecticut to provide special education and related services to resident students with disabilities at least until their 22nd birthdays is equally applicable in New York" (SED Formal Opinion of Counsel No. 242 [July 6, 2023], available at https://www.counsel.nysed.gov/opinions [footnote omitted; emphasis added]).
This opinion was the basis for SED's determination of H.P.'s parents' complaint.
Initially, petitioners contend that the state respondents' argument pertaining to New York's publicly funded adult education programs is unpreserved for appellate review. We disagree. The record reveals that the state respondents filed a memorandum of law in support of the verified answer, in which they argued that
"the Formal Opinion of Counsel also acknowledged that New York, like Connecticut, offers publicly funded adult education programs to non-disabled students in this same age group of individuals, i.e.[,] through one's 22nd birthday, and, thus, advised that to remain in compliance with federal regulations and case law, public schools in New York must provide special education and related services to resident students with disabilities who do not have a high school diploma until the day before a student's 22nd birthday."
As such, this argument was set forth sufficiently to alert Supreme Court of the relevant issue and to preserve the issue for appellate review (see Geraci v Probst, 15 NY3d 336, 342 [2010]; Palmatier v Mr. Heater Corp., 163 AD3d 1192, 1195-1196 [3d Dept 2018]).
Next, petitioners assert that the information which the state respondents cite in their brief — consisting mostly of its government website and websites of nonprofit organizations — is dehors the record and is unworthy of judicial notice.[FN6] As to judicial notice, a court may take notice of certain information, including matters of public record (see CPLR article 45). Courts have repeatedly taken notice of material derived from official government websites (see Maisto v State of New York, 196 AD3d 104, 116 n 11 [3d Dept 2021]; Matter of LaSonde v Seabrook, 89 AD3d 132, 137 n 8 [1st Dept 2011], lv denied 18 NY3d 911 [2012]; Kingsbrook [*4]Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13, 20 [2d Dept 2009]). Moreover, assuming arguendo that judicial notice is not appropriate with reference to the websites and information found thereon, the information was also submitted to this Court, as attachments to an affidavit of a government official, in a related case concerning circumstances similar to those presented here involving the same issue and the same attorneys. Further, oral argument in this Court was heard on the same day on both cases. As such, the relevant information is properly before this Court (see Edgewater Constr. Co., Inc. v 81 & 3 of Watertown, Inc., 24 AD3d 1229, 1231 [4th Dept 2005]; Matter of Allen v Strough, 301 AD2d 11, 18-19 [2d Dept 2002]; Matter of Justin EE., 153 AD2d 772, 774 [3d Dept 1989], lv denied 75 NY2d 704 [1990]). Thus, the Court of Appeals' concern that "facts that are neither inevitable nor a matter of general and public notoriety are generally not fit for judicial notice" is not present here (Matter of Won Yi v New York State Bd. of Professional Med. Conduct, ___ NY3d ___, ___, 2025 NY Slip Op 03103, *3 [2025] [internal quotation marks and citation omitted]).
"Although this Court is generally without power to consider matters not included in the record on appeal, there is an exception for considering reliable documents, the existence and accuracy of which are not in dispute" (Matter of Chloe Q. [Dawn Q.-Jason Q.], 68 AD3d 1370, 1371 [3d Dept 2009] [citations omitted]). Here, petitioners have not disputed the existence of the information contained on the websites nor claimed that the information is inaccurate or incomplete. Therefore, this matter fits the narrow exception and such information "may be considered for the purpose of modifying or reversing an order under appellate review" (Matter of Park Realty Corp. v Hydrania Inc., 17 AD3d 898, 899 [3d Dept 2005]). Accordingly, we will accept (see Crawford v Merrill Lynch, Pierce, Fenner & Smith, 35 NY2d 291, 299 [1974]; Matter of Chloe Q. [Dawn Q.-Jason Q.], 68 AD3d at 1371; Matter of Park Realty Corp. v Hydrania Inc., 17 AD3d at 899; Brandes Meat Corp. v Cromer, 146 AD2d 666, 667 [2d Dept 1989]) and take judicial notice of the information and documentation (see Maisto v State of New York, 196 AD3d at 116 n 11; Matter of LaSonde v Seabrook, 89 AD3d at 137 n 8; Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d at 20).
As the relevant facts are not meaningfully different from those presented in Matter of Mahopac Central School Dist. v New York State Education Department (__ AD3d __ [3d Dept 2025] [decided herewith]), and, for the reasons stated therein, SED's determination that to ensure equivalent education opportunities for students with and without disabilities, a school district should provide education services to students with disabilities up to their 22nd birthday has a sound basis in reason and is supported by the record, and, thus, is not arbitrary and capricious (see Matter of John E. [*5]Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 962 [3d Dept 2024]; Matter of Fuller v New York State Dept. of Health, 127 AD3d 1447, 1449 [3d Dept 2015]). The parties' remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.
Garry, P.J., Clark, Lynch and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law and the facts, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner Katonah-Lewisboro Union Free School District is governed by petitioner Board of Education of the Katonah-Lewisboro Union Free School District.
Footnote 2: The Committee on Special Education is a multidisciplinary team established to ensure the timely evaluation and placement of students (see 8 NYCRR 200.1 [k]; Education Law § 4402 [b] [1]).
Footnote 3: An individualized educational program is a written statement prepared annually by a team of individuals setting forth a plan to meet the unique educational needs of a student with a disability. The plan contains statements addressing the child's special education needs, related services and supplementary aids, as well as program modifications or supports for school personnel. An individualized educational program includes current and comprehensive multidisciplinary evaluations and progress reports (see 8 NYCRR 200.1 [y]; 20 USC 1414 [d] [1] [A] [i][iv]).
Footnote 4: " 'Compensatory education' is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education" (Somoza v New York City Dept. of Educ., 538 F3d 106, 109 n 2 [2d Cir 2008] [citation omitted]).

Footnote 5: Petitioners contend that under state law students are only entitled to receive a public education until their 21st birthday (see Education Law § 3202), and that Education Law § 4402 extends this period for students with disabilities to the end of the school year of their 21st birthday.

Footnote 6: Dehors means that this Court cannot consider a document because the document was not submitted to and used as evidence in Supreme Court.